[See Cases Nos. 15,973 and 15,975.]

## Case No. 15,975.

### UNITED STATES v. O'SULLIVAN.

[2 Whart. Cr. Law, § 2802, note.]

District Court, S. D. New York. 1851.

MILITARY EXPEDITIONS AGAINST FRIENDLY PEOPLES — STATUTE OF 1818 — WHAT CONSTITUTES THE OFFENCE — CRIMINAL LAW — PROVINCE OF JURY.

[1. Before the jury can convict any persons of preparing or setting on foot, etc., an expedition against any prince, people, etc., with whom the United States are at peace, under the act of 1818, it must be proved to their satisfaction that the purpose of the expedition or enterprise was some military service, some attack or invasion of another people or country as a military force. To constitute the offence there must be a hostile intention connected with the act of beginning or setting on foot the expedition.]

[Quoted in U. S. v. Lumsden, Case No. 15,-641.]

[2. When connected with this hostile intent, there are four acts which the statute declares unlawful, either one of which completes the crime; namely: (1) to "begin" an expedition; (2) to "set on foot" an expedition; (3) to "provide the means" for an expedition; and (4) to "procure" those means.]

[3. To constitute the offence it is not essential that the expedition should start for its destination. On the contrary, the law is designed to reach any act done within the jurisdiction of the United States in preparation for, or furtherance of, a warlike expedition against a people with whom the United States are at peace, without regard to whether the expedition was ever actually started on its way or not.]

[4. The law of 1818 is not a neutrality law merely, which applies only during a state of war, in order to prevent our citizens from interfering as against one of the belligerents. On the contrary, it applies to all hostile expeditions or purposes designed to violate the peace and rights of a people at peace with the United States, whether they be at war with any other nation or not.]

[Cited in U. S. v. Lumsden, Case No. 15,641.]

[5. The statute of 1838 does not affect the application of the law of 1818 to all ordinary cases. The former act was only a temporary provision, adapted to the peculiar conditions of the Northern frontier, and intended to stop incursions into the Canadas.]

[6. The guilty purpose must be proved, and the guilty acts done within the judicial district, where the indictment is found.]

[7. In criminal cases in the federal courts the jury are not the judges of the law, as well as of the facts. They are to understand and accept the law as it is stated to them by the court.]

[See Cases Nos. 15,973 and 15,974.]

JUDSON, District Judge (charging jury). "The cause now to be committed to you is that of the United States against John L. O'Sullivan, Lewis Schlessinger, and A. Irvin Lewis, all of whom have been arrested. Schlessinger, having given bail, does not appear, and the case goes on against O'Sullivan and Lewis. The indictment is found on the 6th section of an act of congress, passed April 20, 1818 [3 Stat 449]. The section is in the following words: 'That if any person, shall, within the territory or jurisdiction

of the United States, begin or set on foot, or provide or procure the means for any military expedition or enterprise, to be carried on from thence against the territory or dominions of any foreign prince or state, or of any colony, district or people, with whom the United States are at peace, every such person so offending, shall be deemed guilty of a high misdemeanor.' The indictment contains ninety-seven counts, setting out in different forms the offence supposed to have been committed against this act. These various forms of declaring are adopted for the purpose of meeting the phraseology peculiar to this act. At the same time it is not claimed that more than one offence has been committed. You will, therefore, be unembarrassed with these matters of form. The 10th count must be laid out of the case. In the disposition of this case much depends upon the proper construction of this act of congress; and on this subject we are to be governed by established rules; and, so far as I have been able to investigate the matter, we shall have no occasion to seek out any new or untried rules for our guide. And, first of all, it is an undeniable proposition, that all penal statutes are to receive a strict construction. This is a penal statute, and it falls within this rule. The terms used are not to be extended beyond their natural import to fix an offence on the defendant; but this rule, on the other hand, does not require any such construction as to fritter it away, and defeat its object, and annul the law itself. I will then state to you, in the outset, some of these essential rules, and point out their application. We are to look at the spirit, intent, and object of a law—what mischief it was intended to prevent, and in what manner the remedy is to be applied? What, then, is this law? Its great object—the all-pervading object of this law—is peace with all nations—national amity—which will alone enable us to enjoy friendly intercourse and uninterrupted commerce, the great source of wealth and prosperity—in short, to prevent war, with all its sad and desolating consequences. These being the objects of this law, they are sufficiently important to arrest the intention of both court and jury, and secure, to the United States and to the accused, a fair and impartial trial. Before the jury can convict on this indictment, it must be proved to their satisfaction that the expedition or enterprise was in its character military; or, in other words, it must have been shown by competent proof that the design, the end, the aim, and the purpose of the expedition, or enterprise, was some military service, some attack, or invasion of another people or country, state, or colony, as a military force. The engagement of men to invade or attack any other people or country, by force and strong hand—the designation of officers—the classification and arrangement of men into regiments, squadrons, battalions, or compa-

nies; the divisions of the men into infantry, cavalry, artillery, or riflemen; the purchase of vessels or steamboats—military stores—such as powder or ball—for an expedition, give character to the expedition itself, provided that there is sufficient proof to satisfy the jury that they are to be used. But any expedition or enterprise in matters of commerce or of business, of a civil nature, unattended by a design of an attack, invasion, or conquest, is wholly legal, and is not an expedition or an enterprise within this act. A colonization, expedition, or enterprise is not unlawful. It contemplates only a peaceful settlement, without intention or design to make war upon people, or to overturn their government. To constitute a misdemeanor under the law of 1818, there must have been a hostile intention connected with the act of beginning or setting on foot the expedition. This intended hostility, or this intended peaceful movement, characterizes the act of beginning or setting on foot an expedition. The one makes it military, and the other makes it colonization. How this distinctive character shall be shown depends on the proof. A vessel, armed and equipped, with all the implements and munitions of war, with men organized into companies, might be a striking spectacle; but even then, we should inquire of the proof, what they were to do, and what their destiny was. Without such qualifying proof it might still be lawful, but with it the military character might be established. In this sense, declarations of intentions would do much to develop the real object, and the object is the great thing to be sought for. A specious covering, an artifice, secret movements, or deceptive proceedings, may aid in fixing the true character of any act.

"These remarks lead me to the consideration of such acts as are penal under the law of 1818. The term 'expedition' is used to signify a march or voyage with martial or hostile intentions. The term 'enterprise' means an undertaking of hazard, an arduous attempt. 'Begin' is to do the first act; to enter upon. We may say, with all propriety, that to begin an enterprise is to take the first step; the initiatory movement of an enterprise, the very formation and commencement of an expedition. 'To set on foot,' is to arrange, to place in order, to set forward, to put in way of being ready. Then 'to provide,' is to furnish and supply, and 'to procure the means,' is to obtain, bring together, put on board, to collect. After all these proofs are made out, the prosecution must further show that the beginning, the setting on foot, or the providing or procuring materials for such an expedition or enterprise, were within the territory or jurisdiction of the United States, and to be carried on from thence, against the territory or dominions of some foreign prince or state, colony or district, or people, with whom the United States were at peace. You will see,

by a careful attention to this law, that there are four acts which are declared to be unlawful, and which are prohibited by the statute. 'To 'begin' an expedition—to 'set on foot' an expedition—to 'provide' the means for an enterprise; and lastly to 'procure' those means. It is not necessary that all these distinct provisions shall be violated to constitute the offence—the proof of either one of them will be deemed sufficient. These are put in the alternative. As an illustration of what has been said thus far, I will remark—that to purchase, charter, repair, or fit up any .vessel or steamboat; to procure and put on board such vessel or steamboat, powder, ball, fire-arms, military stores, ship stores, or any of them, to be used at any place in contravention of, and with an intent to violate, this act, is proper evidence; to enlist, engage verbally, or contract with men as officers, soldiers, or musicians, to go out on such an expedition, as I have defined, may be considered by the jury, as providing and procuring the means of a military expedition and enterprise; and if the proof shows the additional fact, that these means were provided and procured for a military expedition, or enterprise, then it is your business to consider such acts as falling directly within this law.

"It is not essential to the case that the expedition should start, much less, that it should have been accomplished. To 'begin' is not to 'finish.' To 'set on foot' is not to accomplish. To provide and procure powder is not to put to it the match, or the percussion. It is not necessary that the vessel should actually sail, nor is it necessary that war should exist between the nation on which the descent is to be made, with another nation.

"The counsel for the defence, in the course of the argument, have laid down several important propositions of law, of which I have been called upon to speak to you. They put forward this as the leading proposition, to wit:

"(1) 'The jury are judges of the law of the case.' This question has been argued at great length and with great zeal, enforcing upon you the propriety of adopting this as a rule of our proceeding. Now, why is this? The law is not so—the law never was so in the United States courts—and I think I may safely add, that it never can be so. I refer to the opinion of the late Judge Story, and especially to a. very late opinion of Judge Curtis, one of the judges of the supreme court of the United States, which has been read to us. These opinions settle the matter, that the court is to judge of the law, and that the jury are to understand the law as it is pronounced by the court. Judge Thompson always so held in this circuit—so, I believe, in all the other circuits. No principle can be better settled, or more universally acquiesced in. It is no advantage to the jury to possess this power, and any attempt

to exercise it, is a direct violation of the oath of the jury. What has surprised me is, that counsel, with all the knowledge of these decisions, should argue for hours that this is not law. Yet we have heard of such arguments here, and it becomes my duty to tell you that no countenance can be given to the proposition. But I think it requires and deserves the unqualified disapprobation from the place which I occupy.

"(2) 'This expedition, whatever it might have been, had never gone forth.' Now, gentlemen, this proposition is not the law of the United States, which you have sworn to support. The statute does not require that the expedition should go out, and the decisions which I will soon read to you will settle this in like manner.

"(3) 'That the law of 1818 is a neutrality law merely, and designed only to apply to a state of war.' Well, this proposition must stand also corrected by numerous determinations, which I will incorporate into my remarks. Again, it is said that

"(4) 'The law of 1838 shows that the law of 1818 could not operate.' The law of 1838 was a temporary law, adapted to the peculiar condition of the Northern frontier; and a new rule of evidence was introduced, founded on probable cause alone, as sufficient authority to seize and stop the incursions into the Canadas—then, by this law of 1838, a new set of officers were vested with the power to take possession and stop the invasion. It is, therefore, inapplicable, and may be laid out of view.

"(5) 'If convicted, these defendants are to be sent to the state prison.' This is not so. These varied propositions of the law cannot be sustained by this court. I will have you distinctly understand that the defence cannot be aided by these propositions—they will afford no security to the defendants, and I think it peculiarly unfortunate that the defence should be placed on grounds so untenable. And I shall here entreat you by no means to hazard the cause of the defendants upon such grounds.

"Gentlemen of the Jury, you will see now, by what follows, that all these questions of law have been settled, leaving nothing for me to do except to acquiesce in the law as it has been declared and pronounced by all the learned judges in the United States, who have passed upon the questions. The decisions have been uniform, and surely it would be worse than presumption in me, even to question what has been thus established by such high and ample authority. My business is to pronounce the law as it is, and it is yours so to receive it, and be satisfied. I hold in my hand the able opinion of the Hon. Judge Betts, delivered after full argument on this very indictment, delivered from this bench last July. Every question of law raised in this argument was then decided. How can I reverse that judgment? You know who pronounced it, and the great

weight to which it is entitled, from the long experience and great learning of that judge. I find, also, by the report itself, that these questions have been submitted to the learned judge of the supreme court, who presides over this circuit—that he concurs in the law as there ruled; and, of course, it has become the law in my district, as well as in this, and while it stands unreversed, it is the law of the Union. I cannot stop here to read the whole report, but I will read in your presence a few extracts:

"'This is all I deem necessary to be said in this connexion in relation to the views of the executive department of the government, antecedent and subsequent to the passage of the law (and in this respect the acts of 1794 and 1818 may be regarded as identical), showing that it was called for and always accepted and enforced as a law, no less of non-interference by our citizens—by military expeditions, against nations at peace with all the world, than one prohibiting acts of hostility in favor of any belligerent power against another at peace with the United States. This topic, however, being the one on which the defendants chiefly rely, they insisting the act of congress does not apply to the facts alleged against them, and the question being of great public moment to our own citizens, and in our relations with foreign governments, it is meet the subject should be considered under other aspects. And I think the import of the law collected from its face, according to the established rules of interpretation, plainly denotes the intention of congress to stamp as crimes acts done within our territories, designed to violate the peace and rights of a friendly people, whatever may be the relation of such people in respect to other nations. The cardinal consideration is, are they in amity with the United States, and, if so, no person shall be permitted within our jurisdiction, to take any warlike measure designed to disturb that peace? I see no mode of satisfying this language, but in holding that it comprehends all the acts denounced, when committed within the United States, against a friendly power, without respect to his relationship to other powers. This, it appears to me, has been the acceptation in which this act has been received by our judges and most eminent jurists since its enactment. It is no part of the description of the offence that the expedition or enterprise shall have left the United States, and, accordingly, it can be of no essential importance to allege the particular point contemplated for its departure.'

"The guilty purpose must be proved, and the guilty acts to be all done within the district of New York, and it in no way qualifies or affects the character of these particulars, whether the defendants intended to put off the expedition at Castine, Galveston, or any intermediate point.

"I have occasion to refer again to the opinion of Judge Betts, contained in his charge to a grand jury of this district, and the legal argument which it embraces is so much in accordance with my own views, that I deem it proper to make it a part of my charge. The clerk will oblige me by reading it: 'The act of congress of April 10, 1814, prescribes the laws of neutrality which our citizens are bound to observe in regard to foreign nations. The provisions are stringent, but no more so than comports with the high character for justice and good faith towards others, which it is the policy and aim of this government to maintain. In leaving to every citizen, as an individual, the undisputed right to expatriate himself, at his own option, and connect himself with any other nation or people, this government still possesses the unquestionable power to prohibit that citizen, individually, or in association with others, entering into engagements or measures within the American territory, or upon American vessels, in hostility to other nations, and which may compromit our peace with them. It would be most deplorable if no such controlling power existed in this government, and if men might be allowed, under the influence of evil, or even good, motives, to set on foot warlike enterprises from our shores, against nations at peace with us, and thus, for private objects, sordid or criminal in themselves—or under the impulse of fanaticism or wild delusions—bring upon this country, at their own discretion, the calamities of war. The will of the nation is expressed in this respect, by the statute of April, 1818. It attempts to guard against the infraction of the peace and rights of friendly powers by our own people, or by acts done within our territory, by inhibiting therein all proceedings of a warlike purpose or tendency, against any foreign government or people, with whom the United States are at peace. The only provisions of the statute which come within the scope of your inquiry to the court, and to which your attention should be addressed, are contained in the sixth section. The sixth section makes it a high misdemeanor for any person within the territory or jurisdiction of the United States to begin or set on foot, or provide, or prepare the means for any military expedition or enterprise, to be carried on from thence against the territory or dominions of any foreign power or state, or of any colony, district, or people, with whom the United States are at peace. This language is very comprehensive and peremptory. It brands as a national offence the first effort or proposal by individuals to get up a military enterprise within this country against a friendly one. It does not wait for the project to be consummated by any formal array, or organization of forces, or declaration of war; but strikes at the inception of the purpose, in the first incipient step taken, with a view to the enterprise, by either engaging men, munitions of war, or means of transportation, or funds for

its maintenance; and even further, it is not necessary that the means shall be actually provided and procured. The statute makes it a crime to procure those means. This would clearly comprehend the making ready, and the tender or offer of such means to encourage or induce the expedition; and may probably include also any plan or arrangements, having in view the aid and furtherance of the enterprise. Under this provision of the law, you will, therefore, inquire carefully whether any person or persons have been concerned within this district in getting up a hostile expedition against the Island of Cuba; whether by them, or through their agency or influence, men have been secured, enlisted, or employed, to carry it on; whether munitions of war, money, or transport vessels have been provided here for that object; and if the facts in proof fasten on any individual a participation in such acts, it is your duty to indict him for the violation of this statute, and present him for trial before this court. It must be manifest to you, gentlemen, that these criminal designs, if undertaken, will be managed with much disguise and caution; it is not probable that soldiers will be openly enlisted, or officers commissioned, or vessels freighted to transport munitions of war, or men to the field of action. Pretences and coloring will be employed to mask the real object the parties to such criminal proceedings contemplate. But if you discover the purpose really to be to supply the means of hostile aggression against Cuba, then all persons connected with it, and promoting it will be answerable for the violation of the laws of the United States in the undertaking, the same as if their proceedings had been openly and avowedly intended for a hostile invasion, and waging war on that community.'

"Superadded to this authority," continued Judge JUDSON, "which alone would be conclusive on me, we have the opinions of Judge M'Lean, Judge Catron, Judge Story, Judge M'Kinley, and Judge M'Caleb, all to the same point, fully and powerfully sustaining the decision of Judge Betts. I think I may say to you, with entire confidence, that the law is well settled, that the acts charged in this indictment fall within this law, and that the proper defence to be urged before you was, that the government have failed to prove the allegations in the indictment, and there the defence must rest. These are wholly questions of fact, belonging to the jury; and I am the last person to invade your rights, or to interfere with your exclusive privileges in weighing the testimony in all criminal cases. I would not, if I could, do that, because there is a sufficient responsibility on me without assuming yours. No, gentlemen, you are left free to be influenced by your own convictions of duty, in weighing this evidence. If, upon your oaths, you can say that the facts in this case are not true, then it will afford me unspeakable

pleasure to hear the verdict so pronounced, because I confide this part of the case to you, and you must be responsible to your own consciences for the result.

"But, before this case is committed to your deliberation, it may be proper to allude to an appeal that has been made to you, which certainly requires a trifling notice. It is said here, that there has not been a conviction upon this act, by any jury. This is the appeal; and the recent trials at the South are relied upon as guides for you also. But, gentlemen, it was no fault of the law that an acquittal took place there. The fault was elsewhere; and I should tell you that the fault rested with the jury, precisely as it did many years ago in Georgia, when the much-lamented Whitney sought, in that state, to recover for a wanton interference with his rights. The law was in his favor; it was so pronounced by the court, over and over again; yet he could not have a verdict for the redress of his great wrongs, because the jurors were influenced by their interests, and by their prejudices, to have the law thus violated. The state herself was dishonored, and the jurors must have lived to feel the sting of remorse.

"But, again, it has been said that Colonel Burr was not convicted of treason, and could not be convicted under the act of 1794, for a high misdemeanor. He was indicted in the District of Columbia,[1] instead of the state of Ohio, where the crime was committed. He ought to have been indicted in the right district, and there he might have been convicted. I may be excused in a passing remark regarding what has been said by the counsel for the defence, as to the district attorney, his preparation and management of this cause. The terms used, as you will bear me witness, were unusually severe, harsh, and reproachful, such as are not often heard in a court of justice. I am induced to this for the sole reason that I fear you may suppose, from my silence, that the attack was to be justified by the circumstances of the case. Personal assaults like these should not be made, unless there shall be found a clear warrant for them, in both the conduct and motive of the person assailed. It has been my fortune to have known the district attorney from his youth. He is a native of my own county, born and reared up in a town adjoining that of my birth-place. He was prepared for college life in the village where I live. When he presented himself for admission at our bar, it was my lot to examine his qualifications; and, as we there had an old-fashioned requirement of good character, he was reported to the court by me as being, in this particular, above all suspicion or reproach. I well remember

---

[1] [Evidently a mistake. Burr was indicted and tried in the district of Virginia. See Case No. 14,692a.]

how joyfully we received him into our fellowship, and with what entire confidence he was received and cheered onward by the public confidence. At the May session of our legislature, in 1823, though much my junior, he was my successor to an honorable post in that body. But he left it for a more ample field, and found it in your city, where he is well known to you all, as a high-minded member of the profession, incapable in his nature of intentional wrong to any human being. Since then, I have only seen him once or twice, until the fall of 1850, but I have not been ignorant of his high position here, earned, as it has been, by a life of honorable toil. Others there may be, who have entitled themselves· to as good a name, and to an equal share of public confidence, but there are none who can, for themselves, claim a better fame, or a more honorable post in the profession; and nothing in the course of this trial has shaken, in the least degree, my confidence in his honor and integrity. Judge ye, whether the remarks to which I have here alluded, were just in their application, or worthy the source from whence they came.

"There is another incident of this trial, which still lingers on my mind; but as it was a matter of personal, rather than a public, concern, I have some delicacy in taking the least notice of it. But, gentlemen, our relations thus far have been so friendly, that I confess I have a strong desire to carry home with me your good wishes, and for that purpose alone I may be indulged in saying that you all must remember that while the senior counsel was opening the defence, by an attack on an officer of this court, and after he was denounced in unmeasured terms, according to the views of the speaker, you were told 'that the court sanctioned the unlawful expedition on the treasury of the United States.' You will remember, also, that every èye, except that of the speaker, was fixed on the point of personal assault. You may remember, too, that the object of that attack, bitter and unkind as it was, sat in silence. A week has elapsed, and still the shaft is left. When this case is over, I expect to leave you, perhaps forever, and as I desire to carry back to my home your friendship and confidence, there is but one favor to be sought at your hands. For this reason I ask the jury to place these unmerited remarks by the side of the testimony of Burtinett, and let them both be stricken from the case. Perhaps you may say that it was my duty to have stopped all that portion of the argument which related to the law of the case, as was done recently by one of the most learned judges of the supreme court, Judge Curtis. Perhaps I should have done so; but on a moment's reflection you will see why I let the argument proceed. This is not my own judicial district; and as I am here in obedience to the law which has

called me, and am a stranger to the jury, I did not wish even to appear to assume power which others might suppose belonged to you. I have heard it all. And again, I was equally disposed to give to these defendants every benefit of what their counsel might, by any possibility, conceive for their benefit. Hence the indulgence has been cheerfully granted; and I repeat, what cannot be too often repeated, that the defendants are entitled to every reasonable doubt arising out of the testimony.

"Now, gentlemen, I have endeavored to dispose of many of the difficulties and embarrassments which have hung around this case, and in some measure obscured the real merits, which are indeed so important to those defendants and to the country. In this humble effort, I hope that I may have aided you, and rendered your task somewhat less responsible. My wish and my object have been to render the case less complicated and more simple—to present to you only the real question to be tried. It is a question of fact merely. Give yourselves no trouble and no anxiety about anything else but the facts in the case. Have the allegations in this indictment been proved? That is all. This cause is put to you to be decided on its own merits—on the truth of the allegations contained in the indictment, as they are laid, in one or any of the counts except the nineteenth. You will, of course, remember that you are a New York jury, empanelled here, and not in New Orleans, nor in Mississippi—knowing, as you do, that your verdict must be according to the evidence given in court.

"A single word as to the facts: (1) From the evidence, you must be satisfied, beyond any reasonable doubt, that persons were combined to begin, or set on foot, a military expedition in the city of New York, to be carried on from thence against a territory with which the United States were at peace. (2) If from the evidence, you find such a combination or agreement to have been made, or understood by them, then what any one of those persons may have said or done, in relation to the expedition, becomes evidence against all. (3) The proof must establish in your mind, that the expedition or enterprise was a military enterprise, and evidence showing that the ends and objects were hostile or forcible against a nation at peace with the United States—then it is, to all intents and purposes, a military expedition. (4) The prosecution is bound to prove that act of beginning, or setting on foot, or that the means were provided or procured within the Southern district of New York. (5) You must be satisfied, from the evidence, that these defendants have done these acts, or participated in their being done, before you can return your verdict against them.

"The testimony is now before you, and that portion of it which has been presented

through Mr. Johannisson, the interpreter, in a manner acceptable to both parties, requires your careful attention. To show you the important principle involved in the invaluable right of a jury trial, and as that right is to be preserved inviolate, I shall leave the evidence in your hands, without naming a witness, or commenting upon any of the testimony, either written or parol. It is your province to weigh that evidence, and apply the law as now construed to that testimony, and return your verdict accordingly. Prejudices you should have none; they are unworthy of such men and such a cause. Partialities you cannot entertain, because your oath forbids their indulgence. You are not to convict or acquit because those accused are great men or small men, but only because the evidence of the case makes your duty plain. The law is no respecter of persons, and the glory of our land is, that, in the hands of an upright jury, the administration of justice reaches the high and the low, the rich and the poor, with unerring equality. The law never punishes to inflict a wound. The real objects are, to reform the individual, and to prevent others from like offences, so that life, property, and character may be made secure.

"To conclude, I will only say, do your duty to the government—do your duty to the accused, without fear or favor of any man—protect the innocent, but punish those who may have violated your laws. Let the evidence in court and your conscience be your guide. This will give you rest and peace."

For forms of indictment, see Whart. Prec. Ind. 1121, &c.