## JACOBSEN v. UNITED STATES.

(Circuit Court of Appeals, Seventh Circuit.   December 16, 1920.   Rehearing Denied April 5, 1921.)

Nos. 2633–2636.

1. **Criminal law ☞619—Indictments for conspiracy and substantive offense may be consolidated.**

    Indictments for a statutory offense and for a conspiracy to commit such offense may properly be consolidated for trial under Comp. St. § 1690.

2. **Indictment and information ☞125(20)—Neutrality laws ☞5—Indictment for organizing military expedition sufficient.**

    An indictment under Criminal Code, § 13 (Comp. St. 1916, § 10177), for organizing a military enterprise against a friendly nation, *held* sufficient, and not subject to objection for duplicity because it charges different acts specified in the statute, but all tending to the same end.

3. **Neutrality laws ☞5—Acts preparatory to military enterprise against friendly power unlawful.**

    To sustain an indictment under Criminal Code, § 13 (Comp. St. 1916, § 10177), charging that defendants did "begin, set on foot, provide, or prepare the means for" a military expedition against a friendly power, it is not necessary that the acts of defendants should have progressed so far as the complete organization and sending of such expedition, or that it was to be wholly carried on from the United States, but it is sufficient if the plan was made and was to be directed from here, and that funds were collected in this country for carrying it out.

4. **Conspiracy ☞45—Evidence held admissible.**

    On a trial for conspiracy, evidence tending to show the relations between defendants and the relation of some of them to acts in furtherance of the purpose of the alleged conspiracy *held* properly admitted.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Criminal prosecutions by the United States against Gustav H. Jacobsen, Albert H. Wehde, George Paul Boehm, and Heramba Lal Gupta. Judgments of conviction, and defendants bring error. Affirmed.

Henry W. Freeman and Wm. S. Forrest, both of Chicago, Ill., for plaintiffs in error.

Joseph B. Fleming, of Chicago, Ill., for the United States.

Before BAKER, ALSCHULER, and PAGE, Circuit Judges.

PAGE, Circuit Judge.   In an indictment returned in the Eastern Division of the Northern District of Illinois on June 2, 1917 (No. 6094) defendants Jacobsen, Wehde, Boehm, Gupta, and others were charged with violation of section 13 of the Criminal Code of the United States, which reads as follows:

"Whoever, within the territory or jurisdiction of the United States, begins, or sets on foot, or provides or prepares the means for, any military expedition or enterprise, to be carried on from thence against the territory or dominions of any foreign prince or state, or of any colony, district, or people, with

whom the United States are at peace, shall be fined not more than three thousand dollars and imprisoned not more than three years." Comp. St. 1916, § 10177.

By an indictment returned at the same time (No. 6082) they were charged with a conspiracy under section 37 of the Criminal Code of the United States, which reads as follows:

"If two or more persons conspire either to commit any offense against the United States, or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be fined not more than ten thousand dollars, or imprisoned not more than two years, or both." Comp. St. § 10201.

Over the objection of the four defendants tried, the two indictments were consolidated, and after a trial the jury, on October 20, 1917, found all the four above-named defendants guilty on each of the two charges in the consolidated indictment. Upon those verdicts the District Court imposed separate penalties under each charge against each defendant, the sentences under the two charges to run concurrently, and this proceeding is under four separate writs of error seeking a review of the sentences against the defendants, who are plaintiffs in error here.

The charge for violation of section 13 is that the several defendants—

"did unlawfully and feloniously begin, set on foot, and provide and prepare the means for, a certain military enterprise, to be carried on from thence against the territory and dominions of a certain foreign prince, to wit, the king of the United Kingdom of Great Britain and Ireland and of the British dominions beyond the seas, and emperor of India, with whom the United States, throughout said period of time, were at peace; that is to say, an enterprise having for its objects the inciting of armed rebellion in India, of the native subjects of said prince against his government and authority there, and the furnishing of military training to said subjects, and of arms, munitions, supplies and money, for carrying on and supporting such rebellion, and an enterprise which was to carried on from Chicago aforesaid by said defendants devising the plan of the same there, enlisting and assembling men of military training there, sending such men from Chicago to India, going themselves from Chicago to India, and procuring and furnishing money at Chicago for defraying the expenses of such men and of themselves in traveling from Chicago to India, to engage in such rebellion, and for purchasing such arms, munitions and supplies for carrying on and supporting such rebellion."

The charge for violation of section 37 is that the parties named conspired to commit a like offense.

In 1915 Germany and Great Britain were at war, and the United States was at peace with both of them. At various places in this country and elsewhere representatives of the then Imperial German government, notably, Von Papen, military attaché in New York, and Baron Von Reiswitz, vice consul in Chicago, induced Indian-born subjects of Great Britain, German citizens, and former German citizens residing in Illinois and elsewhere to join in a scheme to start a revolution in India against the authority of the British government in India. There were numerous meetings of all the defendants tried and others at the house of defendant Jacobsen in Chicago. Early in 1915 plans

more or less perfect were made and agreed to by all of them to raise men, money, and equipment in Chicago and elsewhere, and to train men and take them, as an armed hostile military force, into India for the purpose stated. The plans were formulated in Chicago and the undertaking was to be, and was, as far as it went, carried on from Chicago and elsewhere in the United States.

In furtherance of the conspiracy, Gupta went from Chicago, with money obtained from Von Papen in New York and from Jacobsen in Chicago, to Japan to buy arms and ammunition to be taken into India. Jacobsen also agreed to and did care for the family of Boehm, while Boehm went to India by way of Manila and Siam to get together and train troops for the proposed Indian rebellion. Sterneck (Scholtz), a defendant not tried, went with Boehm. Both Sterneck and Boehm had had military training and experience. Others left Chicago pursuant to the plans made in Chicago.

Wehde got money from Von Reiswitz in Chicago and started from Chicago for India via Siam and Manila. At Manila, with several of the other defendants, he chartered a boat and got arms and ammunition for the expedition from an interned German vessel. Subsequently Wehde got more money by cable from Von Reiswitz in Chicago.

Many other things were done, by each defendant convicted, pursuant to the conspiracy, and the activities continued until their plans were discovered and they were arrested. The foregoing is a mere sketch of the conspiracy and of the activities of the defendants and others in carrying it out, as shown by the evidence.

[1] 1. There was no error in the consolidation of the indictments. U. S. Compiled Statutes, § 1690; Kelly v. United States, 258 Fed. 392, 402, 169 C. C. A. 408; Emanuel v. United States, 196 Fed. 317, 116 C. C. A. 137.

[2] 2. It is urged that each count of the consolidated indictment is insufficient. The language of each count is substantially that of the statute, and properly charges a statutory offense. The meaning is clear. No injury growing out of any alleged insufficiency or uncertainty in the allegations appears from the record, and none is disclosed in the argument. Under authority of Jelke v. United States, 255 Fed. 264, 274, 166 C. C. A. 434, and cases there cited, the allegations are sufficient.

3. It is next urged that the indictment under section 13 is bad, because four distinct and separate offenses are charged in its one count. This is clearly a misconception of the statute. The thing at which the statute is directed is the prevention of military or naval expeditions or enterprises against governments with whom the United States is at peace. The several things mentioned in section 13 of the statute are merely different ways of accomplishing the general object. This is clearly set out and discussed in Crain v. United States, 162 U. S. 625, 636, 16 Sup. Ct. 952, 40 L. Ed. 1097, cited and relied upon by counsel for defendants here.

[3] 4. There is much discussion of the question as to what constitutes a military expedition or military enterprise, and it is strongly urged that there should have been no conviction because it is claimed

by the defendants that the evidence does not show that all that was done by the defendants did constitute a military enterprise. Whether what the defendants did actually reached the dignity of a military expedition or enterprise is not deemed material, if the evidence shows that, under the conspiracy charge, the conception, the thing they intended, amounted to a military expedition or enterprise, and if under the other charge the defendants did in the way charged any one or more of the things charged. United States v. Ybanez (C. C.) 53 Fed. 536, 538; United States v. O'Sullivan, 27 Fed. Cas. 380, 382.

5. It is claimed that the enterprise or expedition, if there was one, was not one to be carried on from the United States. While the evidence shows that there were some elements of the conspiracy that had their origin elsewhere, yet the record clearly shows that all of the convicted defendants, with numerous other of the defendants named in the indictment, formulated and perfected the plan in the city of Chicago, and that the money for the immediate beginning or setting on foot of the enterprise was to be furnished in Chicago. $20,000 was furnished by the defendant Von Reiswitz before defendant Wehde left Chicago, and $20,000 more was sent Wehde in Manila. Practically all conferences were held at the house of defendant Jacobsen in Chicago and under his direction. The parties, so far as they personally engaged in the enterprise or undertaking, departed directly for participation in the undertaking from Chicago. While there were perhaps promises of aid from other places and persons outside of the United States, the organizing and directing head was in the United States.

[4] 6. The eleventh, twelfth, thirteenth, and fourteenth assignments of error refer to the improper admission of evidence; the eleventh assignment having reference to certain checks testified to by witness Wilms, the twelfth to testimony of the witness Jarosch with regard to a trip made by witness Hermann and Scholtz to Detroit, the thirteenth to testimony of Sukumur Chatterji relating to statements by the untried defendant Sterneck about the use of dynamite in blowing up bridges in Canada, and the fourteenth to the letter from Gupta to Ahatto.

The testimony of Wilms dealt with a letter of credit arranged for in May, 1915, by witness on request of Von Reiswitz, the German vice consul in Chicago, with one Ferdinand Hotz, to be sent, and which was subsequently sent, to defendant Wehde, and also dealt with two other checks, one for $1,000 and one for $250, arranged for in July, 1915, through the witness and paid to the defendant Jacobsen. While it is true that the witness stated that Von Reiswitz said that these two latter checks were to cover up donations to the Embargo Conference, yet all of these matters happened while the conspiracy was going on and while the general scheme was being formulated and carried out. Whether they actually had any bearing upon the conspiracy or the carrying out of it is difficult to determine, yet they were admissible as acts and circumstances showing the relation existing between the indicted defendants Jacobsen and Von Reiswitz.

The journey made by the witnesses Jarosch, Hermann, and Scholtz was made, the record shows, at the instigation of the defendant Jacobsen, and shows his relation to and connection with the transactions

which were undertaken to annoy and embarrass a government with which the United States was at peace. The evidence was properly admissible to show Jacobsen's relation to and connection with matters of the kind and character there under consideration.

The thirteenth assignment of error, relating to the conversations with Sterneck, testified to by Chatterji, was on a little different basis, because the subject-matter had nothing directly to do with the controversy nor with any defendant then on trial; but it is not conceived that it worked any prejudice or injury to any defendant on trial, and it also appears from an examination of the record that no one is in a position to fairly complain of it. The witness was testifying to conversation with Sterneck about things that Sterneck had done in Canada. After an interruption, the witness was told to go on and give the conversation. Defendants' counsel said:

"I have no objection, if it is something that he has not said."

What the witness related was something that he had not said; but counsel for defendants objected that it was not a statement made in pursuance of the alleged enterprise, and made a motion to exclude it, which was overruled. The court charged the jury fully as to all such matters, and then asked:

"On that particular thing, have I covered that to your satisfaction?"
"Mr. Forrest: Yes, sir."

The court then instructed as to the testimony of Jarosch and Hermann about the trip to Detroit, and said:

"You will limit that entirely to the question of the relations between the witnesses Riederer and Hermann and the defendant Jacobsen."

The court then said:

"Have I covered that particular matter? Do you gentlemen think of anything more?"

There was no further suggestion or objection on the part of counsel.

The objection to the admission of the letter of Government's Exhibit code, purporting to have been written by Gupta to Ahatto, is not well taken. Upon the offer of this letter it was first objected that the letter was not identified as that of Gupta. The whole letter, including the signature, seems to have been coded. It was agreed by the defense that the letter was correctly decoded. The letter bore internal evidences of having come from the defendant Gupta and of being connected with the matters for which the indictments were returned. It was further objected by defendants that the letter was presumably stolen, and for that reason was not admissible. The trial judge was very careful to show that counsel for defendants had ample opportunity to inspect the document and that it had been in their possession, and the record shows that the document offered in evidence was in the hands of defendants' counsel in open court. The court said:

"You make no request for the delivery of the document."

The effect of the admission was clearly limited in the offer and in the instructions to Gupta, and there was no error in the admission of the letter.

*7. Instructions.* The objections are to the refusal to give defendants' instructions. They pertain largely to instructions attempting to define a military enterprise, and were erroneous for several reasons. In the first place, they do not contain correct and accurate definitions of a military enterprise; and, in the second place, they erroneously and improperly stress the actual formation of the military enterprise aimed at in the statute. While the substantive thing aimed at in the statute is the prevention of a military enterprise within the United States against a territory or people of a friendly nation, yet the things actually punishable under the statute are very different. It is not necessary, to warrant a conviction under the statute, that there shall at any time be in existence a military expedition or enterprise. So far as a military enterprise is concerned, it is sufficient if a military enterprise was a part of the intent and purpose of those engaged in the conspiracy in the one case, and of the person or persons engaged in the doing of the things prohibited by the statute in the other case. The statute makes it an offense to "begin" a military expedition or enterprise. Manifestly the thing that is only begun is not the completed thing. Another clause makes it an offense to "provide or prepare the means." Manifestly any offense under the statute may be committed by an individual. As to all of the matters surrounding the beginning, setting on foot, and of the character of a military enterprise or undertaking the jury was sufficiently and accurately instructed. What is said above applies with like effect to all of the refused instructions pertaining to the conspiracy charge.

The tenth instruction which the court was asked to give merely pertains to the form of the verdict, and to the fact that the defendants were each entitled to acquittal of what was termed each of the four offenses under section 13. When that instruction was refused, the court said to counsel that there would be given forms of verdict that would enable the jury to give expression to their conclusions. The record fails to show all of the forms of verdict given to the jury, but does show that some of the forms were not returned by the jury. From this state of the record, it must be presumed that the court carried out its expressed intention and purpose, and gave to the jury the forms of verdict necessary.

The judgment is affirmed.