UNITED STATES v. LURIA.

(District Court, S. D. New York. January 27, 1911.)

1. ALIENS (§ 71½,* New, vol. 7, Key No. Series)—NATURALIZATION—CERTIFICATE—FORFEITURE—STATUTES—CONSTRUCTION.

Act Cong. June 29, 1906, c. 3592, § 15, 34 Stat. 601 (U. S. Comp. St. Supp. 1909, p. 485), providing for the cancellation of a certificate of naturalization, does not forfeit the naturalized alien's right to citizenship, but merely confers jurisdiction on the courts of naturalization to cancel a previous certificate for fraud or illegal procurement in its inception.

2. ALIENS (§ 71½,* New, vol. 7, Key No. Series)—NATURALIZATION—CANCELLATION—"ILLEGALLY PROCURED."

The words "illegally procured," as used in Act Cong. June 29, 1906, c. 3592, § 15, 34 Stat. 601 (U. S. Comp. St. Supp. 1909, p. 485), authorizing the cancellation of a certificate of naturalization illegally procured, means procured by subornation or some other illegal means used to impose on the court, and not that the certificate was issued through error of law.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 4, p. 3388.]

3. ALIENS (§ 71½,* New, vol. 7, Key No. Series) — NATURALIZATION — VACATION—FRAUD—STATUTES—JURISDICTION.

Since jurisdiction to naturalize aliens was originally bestowed by Congress on state courts, Act Cong. June 29, 1906, c. 3592, § 15, 34 Stat. 601

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

(U. S. Comp. St. Supp. 1909, p. 485), providing for the vacation of a naturalization certificate obtained by fraud or illegal procurement in its inception, is not unconstitutional because it gives one court power to pass on and annul the proceedings of another.

4. CONSTITUTIONAL LAW (§ 55*)—LEGISLATIVE POWERS—ENCROACHMENT ON JUDICIARY—PRESUMPTIONS.

Act Cong. June 29, 1906, c. 3592, § 15, 34 Stat. 601 (U. S. Comp. St. Supp. 1909, p. 485), authorizing the cancellation of a naturalization certificate, obtained by fraud or illegal procurement in its inception, is not unconstitutional because it declares that in such a proceeding evidence of the acquisition of a new domicile by the naturalized citizen within five years shall be prima facie evidence of fraud; such presumption being within the power of Congress to create as a rule of procedure.

[Ed. Note.—For other cases, see Constitutional Law, Dec. Dig. § 55.*]

5. CONSTITUTIONAL LAW (§ 311*)—DUE PROCESS OF LAW—PRESUMPTIONS.

In a particular case a statutory presumption applied to the trial of an issue determined by the facts which occurred before the presumption existed was nevertheless due process of law.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 932; Dec. Dig. § 311.*]

6. ALIENS (§ 71½,* New, vol. 7, Key No. Series)—NATURALIZATION—CANCELLATION OF CERTIFICATE—FRAUD—COMPLAINT.

A complaint by the United States to cancel an alien's naturalization certificate for fraud was insufficient, where it failed to tender the material issue of fraud, alleging merely a change of residence, which by statute is only prima facie evidence on that issue.

7. ALIENS (§ 71½,* New, vol. 7, Key No. Series)—NATURALIZATION—CANCELLATION OF CERTIFICATE—EVIDENCE.

Defendant's expressions of a definite desire to retain his citizenship in the United States during his continued residence in a foreign country was not determinative of his residence.

8. ALIENS (§ 71½,* New, vol. 7, Key No. Series)—NATURALIZATION CERTIFICATE—CANCELLATION—EVIDENCE—STATEMENT OF CONSULAR AGENT.

In proceedings to cancel a naturalization certificate for fraud, statements of consular agents abroad that defendant had established a permanent residence abroad, etc., were admissible under Act Cong. June 29, 1906, c. 3592, § 15, 34 Stat. 601 (U. S. Comp. St. Supp. 1909, p. 485).

9. DOMICILE (§ 4*)—RESIDENCE—INTENTION.

Where a person's intention to reside abroad is limited to a period itself determined by some definite event, even though the occurrence of that event may be uncertain, it is insufficient to establish a new domicile, particularly where a person goes abroad to stay until his health is restored, in which case he has no intention of indefinite residence; but, if he does not expect to return at all, he loses his original domicile regardless of the fact that he cannot live in the country from which he came.

[Ed. Note.—For other cases, see Domicile, Cent. Dig. §§ 5–23; Dec. Dig. § 4.*]

10. ALIENS (§ 71½,* New, vol. 7, Key No. Series)—NATURALIZATION—FRAUD—DOMICILE—CHANGE.

In a proceeding by the United States to cancel an alien's certificate of naturalization for fraud, evidence *held* to justify a finding that the alien within five years after being admitted to citizenship left the country

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and had taken up his permanent residence in South Africa, and that the government was therefore entitled to decree of cancellation.

**11.** JURY (§ 14*)—RIGHT TO JURY TRIAL — NATURALIZATION CERTIFICATE —VACATION—FRAUD.

A proceeding by the United States to vacate a naturalization certificate for fraud is a proceeding in equity as to which the defendant is not entitled to a jury trial.

[Ed. Note.—For other cases, see Jury, Dec. Dig. § 14.*]

Suit by the United States against George A. Luria. Decree for complainant.

This is a suit to cancel a certificate of naturalization under section 15 of the act of June 29, 1906 (34 Stat. 601, c. 3592 [U. S. Comp. St. Supp. 1909, p. 485]). It was heard upon the following agreed state of acts:

(1) This action was commenced by the filing of a præcipe in the office of the clerk of this court, and the issuing of a summons thereon on the 18th day of September, 1909. The complaint was filed in the office of the clerk of this court on the 20th day of September, 1909. The defendant appeared by Albert M. Friedenberg, his attorney, and filed his answer in the office of the clerk of this court on the 28th day of January, 1910; a summons having been served upon the defendant by publication in accordance with an order directing such service to be made, entered on the 21st day of September, 1909.

(2) That the defendant. George A. Luria, was born at Wilna, Russia, on the 22d day of February, 1868.

(3) That the said George A. Luria emigrated to the United States, sailing on board the steamship Werra, from Bremen, Germany, on the 28th day of April, 1888, and arriving at the port of New York on or about the 8th day of May, 1888.

(4) That the said George A. Luria matriculated as a medical student at the Medical College of New York University in the city of New York, on the 7th day of May, 1889, and attended said college as a medical student during the sessions of 1889–1890, 1890–1891, 1891–1892, and 1892–1893, and received a degree of M. D. therefrom on the 4th day of April, 1893.

(5) That on the 30th day of June, 1892, the said George A. Luria declared his intention to become a citizen of the United States of America and to renounce forever all allegiance and fidelity to the Czar of Russia, of which he was at the time a subject, in the Superior Court of the City and County of New York, in the State of New York, a copy of which declaration of intention is hereto annexed and marked Exhibit "A."

(6) That on the 3d day of July, 1894, the said George A. Luria applied to be admitted to become a citizen of the United States of America, in the Court of Common Pleas for the City and County of New York, and took the oath of allegiance and renunciation, and that on the 3d day of July, 1894, the said Court of Common Pleas made and entered its decree or order admitting the said George A. Luria to be and become a citizen of the United States of America, and that thereupon a certificate of citizenship was issued to him by the said court, copies of which application, affidavit, oath, and order or decree are hereto annexed and marked Exhibit "B."

(7) That on the 27th day of August, 1894, the said George A. Luria applied to the Department of State of the United States of America for a passport for himself, a copy of which application is hereto annexed and marked Exhibit "C," and that on the 29th day of August, 1894, a passport numbered 16,093, was issued to the said George A. Luria upon the said application, by the said Department of State.

(8) That during the year 1894 and for some time prior thereto the said George A. Luria owned a drug store at No. 482 Sixth avenue in the city of Brooklyn, county of Kings, state of New York, which drug store he sold on or about October 24, 1894, to one Dr. I. I. Lourie.

(9) That on the 19th day of June, 1893, the said George A. Luria applied for membership in the New York County Medical Association, which association is composed of persons practicing medicine in the county of New York, but he was never elected to membership.

(10) That on or about the 21st day of November, 1894, the said George A. Luria left the United States and arrived at the Transvaal, South Africa, on or about the 22d day of December, 1894.

(11) That the said George A. Luria sojourned in the city of Johannesburg, South Africa, continuously from the said 22d day of December, 1894, to some time in the spring of 1907, he claiming that his health was impaired, and that it was therefore necessary for him to sojourn in a climate similar to that of South Africa; and that during the said period the said George A. Luria, for the purpose of earning his livelihood, practiced his profession as a physician in the said city of Johannesburg and joined the South African Medical Association composed of persons practicing medicine in South Africa, and also served in the Boer War.

(12) That during the said period from 1894 to 1907 the said George A. Luria applied to the United States Consular Officers at Pretoria and Johannesburg, South Africa, on three separate occasions, to wit, June 29, 1899, March 20, 1902, and February 6, 1905, for passports, copies of which applications are hereto annexed and marked Exhibits "D," "E," and "F," respectively, and that passports numbered 29, 151, and 168 were issued to him upon such applications by the United States Consular Officers.

(13) That in the spring of 1907 the said George A. Luria returned to the United States and remained in the United States until on or about the 21st day of August, 1907.

(14) That from the 18th day of June, 1907, to the 30th day of July, 1907, the said George A. Luria attended a six weeks' course in general at the Post-graduate Medical School and Hospital in the city of New York, and that he gave as his address upon entering the said school post office box 188, Johannesburg, South Africa.

(15) That on or about the 25th day of June, 1907, the said George A. Luria applied to the Department of State of the United States of America for a passport, a copy of which application is hereto annexed and marked Exhibit "G," and that on the 26th day of June, 1907, passport No. 36,693 was issued to him upon the said application.

(16) That during the said spring and summer of 1907 the said George A. Luria did not practice his profession as a physician in the city of New York, and stated to several persons in New York City that he did not then expect to stay in the United States, but was going to return soon to South Africa, giving no reason therefor.

(17) That on or about the 21st day of August, 1907, the said George A. Luria left the United States for the Transvaal and arrived at Cape Town, South Africa, on or about the 17th day of September, 1907, and left immediately for the city of Johannesburg, South Africa, where he has since continued to sojourn and to practice his profession as a physician; it being necessary to enable him to earn his livelihood, he having no other profession or business.

Addison S. Pratt and John N. Boyle, for the United States.
Albert M. Friedenberg, for defendant.

HAND, District Judge (after stating the facts as above). This case raises, and is meant to raise, only one question—the constitutionality of section 15 of the act of June 29, 1906. The act does not forfeit the defendant's right of citizenship as he supposes; it merely gives jurisdiction to the courts of naturalization to cancel a previous naturalization for fraud, or illegal procurement in its inception. "Illegally procured" means procured by subornation or some other ille-

gal means used to impose upon the court; it does not mean that the certificate was issued through error of law. The causes upon which the suit lies are therefore those for which any court may cancel its own judgments, and all that the act does is to give one court such a power over the proceedings of another. Since the original bestowal of jurisdiction was by Congress, this is a mere procedural regulation, no different because state courts are included than if the jurisdiction was wholly vested in District Courts. The substance of the relief remaining the same, i. e., proof of some original fraud or illegal means, it is no substantial invasion of the function of a court to permit the suit to be brought in another tribunal. Indeed, the defendant does not assert that this makes the act unconstitutional. The real challenge is because in the suit so prescribed Congress has established one presumption and one rule of evidence.

The presumption is that evidence of the acquisition of a new domicile, i. e., "permanent residence," within five years shall be prima facie evidence of fraud. The only ground to question this is because it denies due process of law, or interferes with a judicial function. A presumption is only a rule of procedure. It provides that certain evidence shall throw upon the other side the duty of showing his hand, if he has any, or of losing his case, and that is all it does. If once the defendant puts in material evidence of his own, then the evidence which constitutes the presumption merely takes its place as such for whatever probative force it may have, and the tribunal which judges the facts need not regard it as having any further weight than if no presumption existed. Once the issue be opened, the facts are judged like any other facts. Any other rule would require some quantitative valuation of testimony which is in almost every case unknown to our law. Therefore a presumption does not either take from the court its duty to decide upon the facts, or even take from the moving party the burden of proof, i. e., the requirement of satisfying the judgment of the tribunal of fact upon each of the essential facts which together make up the "cause of action."

Being a rule of procedure, such a presumption is within the power of a Legislature. Fong Yue Ting v. U. S., 149 U. S. 698, 729, 13 Sup. Ct. 1016, 37 L. Ed. 905; Ex parte Fisk. 113 U. S. 713, 721, 5 Sup. Ct. 724, 28 L. Ed. 1117. Even in criminal cases. People v. Cannon, 139 N. Y. 34, 34 N. E. 759, 36 Am. St. Rep. 668; Board of Com'rs of Excise v. Merchant, 103 N. Y. 143, 8 N. E. 484, 57 Am. Rep. 705; Com. v. Williams, 6 Gray (Mass.) 1; Com. v. Rowe, 14 Gray (Mass.) 47; State v. Day, 37 Me. 244; State v. Sheppard, 64 Kan. 451, 67 Pac. 870; Com. v. Minor, 88 Ky. 422, 11 S. W. 472. It is true that in this case the presumption applies to the trial of an issue determined by facts which occurred before the presumption existed. That is nevertheless due process of law. Webb v. Den, 17 How. 576, 15 L. Ed. 35; Howard v. Moot, 64 N. Y. 262; Rich v. Flanders, 39 N. H. 304. This is only a species of the general regulation of procedure which the Legislature may always change even when, as in the case of criminal statutes passed by the states, it is

subject to the prohibition against ex post facto legislation. . Hopt v. Utah, 110 U. S. 574, 4 Sup. Ct. 202, 28 L. Ed. 262; Thompson v. Missouri, 171 U. S. 380, 18 Sup. Ct. 922, 43 L. Ed. 204.

No doubt there must be some relation in fact between the evidence constituting the presumption and the presumption itself. The evidence must be such that one may say the presumption is a reasonable inference from it. People v. Cannon, supra. Here if the period was three months, no one could question the propriety of the presumption. It must be conceded that the inference is weak of an absence of intention to become a citizen on a given date, because the applicant at the end of four years and eleven months acquires a new domicile; but that only concerns the periods which Congress may fix. It is a question for large latitude, and no court, certainly not a court of first instance, may say that it is so clearly beyond any reasonable relation to the fact presumed as to be merely arbitrary. A man becoming a citizen should intend to live here permanently, and, if he changes within five years, I cannot say that there is no possible inference from it that he never meant to live here permanently. If he has had an actual change of intent, he can show it.

Now it is true that in this case the complaint does not tender the material issue, which should have been fraud; the change of residence being only prima facie proof upon that issue. As a consequence, the issue tendered is not the fact upon which the relief depends and which the United States was bound to establish to the satisfaction of the court as the ultimate fact. It can, of course, recover only secundum allegata, and its allegations are therefore deficient and the complaint is bad. That point, however, was not raised, and I suppose the defendant does not mean to raise it. It is only a question of pleading at best.

The question, however, still arises as to whether the government has established the fact that the defendant did indeed "take permanent residence" in South Africa. The words of the statute mean the "permanent residence" from which a domicile results, and upon this question some of the agreed facts bear. The defendant has now resided in South Africa for sixteen years with the exception of one interval of four or five months, during the spring and summer of the year 1907. He has there continuously practiced his profession, and in 1900 he served in the Boer War, presumably upon the side of the Boer republics. These facts alone justify the inference as matter of fact that his intention was indefinitely to reside in South Africa, and they do not require in corroboration the conclusion of the consul that he has taken a permanent residence there. There are no contradicting facts except the defendant's expressions of a definite desire to retain his citizenship in the United States. That, however, does not determine his residence. Udny v. Udny, L. R. 1 Sc. App. 441, despite the remarks of Lord Cranworth and Lord Kingsdown in Moorhouse v. Lord, 10 H. L. C. 272. His residence is determined independently of that fact, upon the factum of his physical residence in the foreign country, coupled with his intention to remain in that country for an

indefinite period, which means a period not limited in his mind by any expected event, except of course the expectation of all men that in time they must die.

The contradictory evidence upon his residence is as follows: First, there are the sworn statements made by the defendant on August 27, 1894, before he left the country; those made on June 29, 1899, on March 17, 1902, on February 6, 1905, in Johannesburg, and that made on June 25, 1907, while in New York. All these statements were contained in applications for a passport, and they all contain the statement either that the defendant was about to go abroad temporarily or was temporarily residing in Johannesburg. Also, they all stated that the permanent residence of the defendant is in New York City, and that he intends to return to the United States within two years. These were formal allegations upon printed forms necessary to be filled out by an applicant for a passport, and they are competent evidence of his intention on the question of his domicile. Mitchell v. U. S., 21 Wall. 350, 22 L. Ed. 584.

Next is the agreed statement of fact that he originally went to South Africa claiming that his health was impaired and that it was necessary for him to sojourn in a climate similar to that of South Africa. Next is a statement of the American Consular Agent at Johannesburg, verified on the 23d of November, 1907, in which he stated, among other things, that his conclusion was that the defendant had established a permanent residence in Johannesburg. Further there is a statement of the United States Consul at Pretoria stating that the defendant had offered to him an affidavit saying that his residence abroad was for reasons of health and business, but failing to state that he intended to return to the United States permanently to reside; also stating that the Consul declines to believe his statement that he came to South Africa to regain his health; and finally stating that he has become a permanent resident of South Africa. There is a further statement on February 15, 1909, from the Consul at Johannesburg, containing annexed to it the certificate of two physicians, one of which says that he has treated the defendant for a naso-pharyngeal affection, which he has benefited by his residence in the rarefied atmosphere of the uplands of South Africa, and the other of which states that he has been treated for a pulmonary affection which required a high altitude, that he had already benefited by his residence, and that it was, in the physician's judgment, essential to his continued health that he should continue to reside in a warm and dry climate such as that country afforded.

The statements of the Consular Agent and Consul are made evidence under section 15, and, although of course they are not on that account conclusive, Congress has the power to make them competent evidence, and, as such, the United States should be entitled to whatever probative force the tribunal in fact before whom the issue arises may give them. Indeed, at common law, the statements of an official are admissible in evidence if they relate to acts within his personal knowledge and recorded in the performance of his duties. While it

is true that this would not come within those rules, it is nevertheless of a kind somewhat similar and not without the power of Congress in the exercise of its control over the rules of procedure and evidence. The statements of the Consul, therefore, are admissible. It may be a question whether anything but his mere conclusion upon the question of permanent residence is properly admissible under the statute; but, so far as his other statements are concerned, they aid the defendant, who cannot therefore complain of the addition. I shall therefore consider all the testimony before the court.

From all this evidence it is quite apparent that the defendant's statements of an intention to return within two years cannot be taken at their face value. His position is that he went to South Africa for the benefit of his health, and his physicians' certificates presented by him to the Consul state that he must permanently reside in some such climate. That conclusion is inconsistent with his repeated declarations that he intended to return within two years, and as a question of fact I cannot accept those declarations as true. A more reasonable inference in my judgment is that, whatever may have been his intent when he originally went to South Africa, he had, before this suit was brought, made up his mind for an indefinite period to remain in South Africa. It is true that his motive in going there was apparently to re-establish and maintain his health, which was affected by his residence here; and it may also be taken as true that it is essential for the continuance of his health that he should live either where he is, or in another place of a similar kind. Assuming that to be his motive. the question arises as to whether that affects his intention and therefore his residence. The authorities in this respect, it must be conceded, are not clear. If the person's intention is limited to a period itself determined by some definite event, even though the occurrence of that event may be uncertain, he has not the requisite intention. This is particularly true of a person who goes to a place for the purpose of staying until he is restored to health. Although he is unable to know just when his restoration will occur, his residence is determined by that fact which he expects to occur, and therefore he has no intention of indefinite residence. On the other hand, if he does not expect to return, it is of no consequence that the reason for this is that he can never live in the country from which he came. This is the effect of Hoskins v. Matthews, 8 DeG. M. & G. 13; Firth v. Firth, 50 N. J. Eq. 137, 24 Atl. 916; Atty. Gen. v. Winans, 85 L. T. R. 508.

In Moorhouse v. Lord, 10 H. L. C. 272, the judgment of Lord Cranworth certainly proceeds upon a different understanding of the law; but Lord Chelmsford's judgment is determined by his conclusion that the testator intended to return. The third judgment was that of Lord Kingsdown, which seems to concur with that of Lord Cranworth, although the case which he mentions is that of a man laboring under a mortal disease. This, too, was the fact in Dupuy v. Wurtz, 53 N. Y. 556, in spite of some expressions which seem to indicate a confusion between an intent to reside and an intent to

change one's citizenship. The case of one stricken with a mortal illness, who goes to some other place to die, is analogous to that of one who goes to a place with the intention of staying there only until his health was restored, in spite of the fact that the expected outcome is just the opposite, for the residence in each case is limited by an expected event, which, although uncertain in time, will be controlled by existing facts which the person knows, or supposes he knows, to exist. In spite of the disagreement of authorities, the statement of Mr. Dicey on pages 143–146 of his Conflict of Laws (1896) seems to me the best statement of the law and the only one which can stand on principle. If so, it is quite apparent that the defendant's health may be disregarded as a factor in his intent, however much it may be a motive for his conduct. I therefore conclude that the government has established the fact that he is permanently residing in South Africa.

There remains only the question of the right to a jury trial. The issue is of fraud; the relief is to vacate the order of a court—call it judgment or what one will. That issue and that relief have from time immemorial been granted in courts of equity and are equitable in character, if anything can be. A suit based upon that issue is not within the constitutional requirement of a trial by jury. U. S. v. Mansour (D. C.) 170 Fed. 671.

Let a decree pass canceling the certificate of the defendant.