UNITED STATES of America, Petitioner,

v.

Al RICHMOND, etc., Respondent.

Civ. No. 31995.

United States District Court
N. D. California, S. D.

Nov. 19, 1959.

Lynn J. Gillard, U. S. Atty., William B. Spohn, Asst. U. S. Atty., San Francisco, Cal., for petitioner.

George R. Andersen, Gladstein, Andersen, Leonard & Sibbett, San Francisco, Cal., for respondent.

GOODMAN, Chief Judge.

The Government's denaturalization suit against Richmond tenders a problem not heretofore solved despite the multitude of denaturalization cases over the years.

The respondent Richmond became a United States citizen by order of the U. S. District Court for the Western District of Texas on June 11, 1943. On Oc-

tober 30, 1952 the Government's suit to denaturalize him was filed. The grounds of denaturalization alleged were two-fold: 1. That Richmond's citizenship was obtained by fraud on his part; 2. that his citizenship was "illegally procured".

The undisputed record shows that Richmond was born on November 17, 1913 in a hospital in London, England. He last arrived in the United States on October 2, 1922, and entered as a permanent resident.

On December 21, 1940 Richmond signed and filed his "Alien Registration Form" wherein he stated, among other things, that he had been a member of the Communist Party within the preceding five years.

On June 30, 1942 he filed with local Selective Service Board No. 76 in San Francisco his "Alien's Personal History and Statement". Therein he stated, among other things, that he had been within the ten years preceding June 30, 1942, a member of the Communist Party and of the Young Communist League.

He was inducted into the United States Army on February 25, 1943, served for three years, and was then honorably discharged. While he was in the Army he filed, on April 17, 1943, the preliminary form required for Petition for Naturalization under the Nationality Act of 1940. Among the other statements made in the form was:

"I am not, and have not been for the period of at least 10 years immediately preceding the date of this application, an anarchist, nor a believer in the unlawful damage, injury, or destruction of property, or sabotage; nor a disbeliever in or opposed to organized government; nor a member of or affiliated with any organization or body of persons teaching disbelief in or opposition to organized government. I am attached to the principles of the Constitution of the United States. It is my intention in good faith to become a citizen of the United States, and to reside permanently therein."

Thereafter, and on June 8, 1943, he filed his Petition for Naturalization pursuant to Section 701 of the Nationality Act of 1940. Included in this petition was the statement:

"I am not, and have not been for the period of at least 10 years immediately preceding the date of this petition an anarchist; nor a believer in the unlawful damage, injury, or destruction of property, or sabotage; nor a disbeliever in or opposed to organized government; nor a member of or affiliated with any organization or body of persons teaching disbelief in or opposition to organized government. I am attached to the principles of the Constitution of the United States and well disposed to the good order and happiness of the United States. It is my intention in good faith to become a citizen of the United States, and to reside permanently therein."

There is no record before this Court as to the court proceedings of naturalization on June 11, 1943 except the preliminary form, the Petition for Naturalization and the Certificate of Naturalization.

Section 305 of the Nationality Act of 1940 provided that:

"No person shall hereafter be naturalized as a citizen of the United States * * * Who believes in, advises, advocates, or teaches, or who is a member of or affiliated with any organization, association, society, or group that believes in, advises, advocates, or teaches * * * overthrow by force or violence of the Government of the United States or of all forms of law." 54 Stat. 1141.

■ The Petition for Naturalization did not require an answer to any question dealing with the foregoing provision of the Act of 1940, nor did the Preliminary Form for Naturalization. The Act of 1940 contained no provision making members of the Communist Party ineligible for United States citizenship.

■ There is no evidence before this Court of any fraud or wrongful act of

respondent inducing or bringing about his naturalization. Obviously there could not be, for the respondent disclosed to the Government his membership in what some years later became a proscribed organization.

The climate of the United States' international relationships in 1943 may well explain its disinterest at that time, and indeed indifference to the Communist Party affiliations of the respondent, either as soldier or prospective citizen.

The Government, however, contends that respondent's citizenship should now be cancelled upon the ground that it was "illegally procured". The Government says that in 1940 a person belonging to an organization advocating the overthrow of the Government of the United States by force and violence, by virtue of the provisions of the 1940 Act, was ineligible for citizenship; that since respondent admittedly was a member of the Communist Party within the ten years prior to naturalization, and since the Government can show in this case, as it has in others, that the Communist Party is, and was at the pertinent time, committed to the program of overthrowing the United States Government by force or violence, therefore, the respondent's citizenship was "illegally procured" since he lacked the eligibility of citizenship prescribed by the 1940 Act.

The Government urges that it is not necessary to prove fraud or wrongdoing in the naturalization process in order to establish that respondent's citizenship was "illegally procured", that it is sufficient to show that the respondent belonged to an organization, membership in which, because of its objectives, precluded him, at the time, from citizenship, and that when these factors appear the Court is bound to denaturalize upon the principal ground that the Naturalization Court was without power to naturalize an ineligible applicant.

Ever since 1906 when the Congress first provided by statute for denaturalization on the ground of "fraud" or on the ground that the certificate of naturalization was "illegally procured", 34 Stat. 596, 601, the Courts have wrestled with the interpretation of the term "illegally procured". A variety of meanings have been ascribed to it by the lower federal courts.[1] The United States Supreme Court has applied the term in specific factual situations, but has never provided a general definition.

■ Many of the lower federal courts have given the term "illegally procured" its ordinary meaning of unlawful conduct on the part of the procurer.[2] But, the United States Supreme Court in United States v. Ginsberg, 1917, 243 U. S. 472, 37 S.Ct. 422, 61 L.Ed. 853, made it clear that "illegally procured" also encompassed an improper grant of citizenship by the court when undisputed evidence in the record showed the applicant to be ineligible for citizenship.

The Government relies on Ginsberg as establishing the rule that should govern this case. But, in Ginsberg the ineligibility of the applicant was apparent from undisputed facts in the record showing he had not been a resident of the United States for the required period. The Naturalization Court therefore acted contrary to law in granting citizenship.

■ ■ In the present case, there has been no showing that there was any evidence whatsoever before the Naturalization Court indicating that respondent was ineligible for citizenship. It does not appear whether or not the Naturalization Court was advised that respondent had been a member of the Communist Party within the preceding ten years. But, even if this fact which was known to the Government, had been before the Naturalization Court, the Court would not have acted contrary to law in granting a certificate of naturalization in

---

1. See e. g. the cases construing the term "illegally procured" compiled in United States v. Kusche, D.C., 56 F.Supp. 201, 210–216.

2. See e. g. United States v. Richmond, 3 Cir., 1927, 17 F.2d 28; United States v. Bialoglowski, D.C.S.D.Cal.1937, 21 F. Supp. 613; United States v. Luria, D.C. S.D.N.Y.1911, 184 F. 643.

the absence of evidence before it requiring a finding that the Communist Party during the period of respondent's membership was an organization advocating the overthrow of the Government of the United States by force and violence.

In addition to the Ginsberg decision, the Government also relies on two decisions in the United States District Court for the Eastern District of Michigan in which the defendants were denaturalized on the ground they were ineligible for citizenship at the time of naturalization because they had been members of the Communist Party within the preceding ten years.

In the most recent of these two cases, United States v. Polites, 1953, 127 F. Supp. 768, the Court upheld the contention of the Government that the defendant's naturalization was illegal because he had stated in his petition that during the ten preceding years he had not been a member of an organization advocating and teaching the overthrow of the Government of the United States by force and violence,[3] when in fact he had been a member of such an organization. The Polites case is thus distinguishable from the present case wherein the respondent made no representations as to the principles or teachings of the Communist Party regarding violent overthrow of the Government of the United States, although he had made his membership known to the Government.

In the second case relied upon by the Government as analogous to the present case United States v. Chomiak, 108 F. Supp. 527, affirmed Sweet v. United States, 6 Cir., 1954, 211 F.2d 118, certiorari denied 1954, 348 U.S. 817, 75 S. Ct. 28, 99 L.Ed. 644 it does not clearly appear whether or not the defendant had made any misrepresentations of fact in his naturalization petition, although the statement of the denaturalization court that it had heard evidence regarding his

membership in the Communist Party would suggest that he may have falsely denied such membership. But, be that as it may, this Court cannot accept the Chomiak decision as a proper interpretation of the term "illegally procured" if that decision extends the term to cover a naturalization where there was neither a misstatement of fact by the applicant or his witnesses nor an unlawful grant of citizenship by the Court in the face of a record showing ineligibility.

In Chomiak, the Court specifically relied on the Ginsberg decision, which, as has been noted, went no further than to hold that citizenship was "illegally procured" when a naturalization court granted citizenship in the face of undisputed facts in the record showing the applicant's ineligibility. Except possibly for the decision in Chomiak, no decision either by the Supreme Court or by any of the lower federal courts has been cited or found in which citizenship was held to be "illegally procured" unless either the applicant or his witnesses had concealed or knowingly or unwittingly misrepresented a material fact or the naturalization court had granted citizenship contrary to law in the face of uncontradicted evidence showing ineligibility or non-compliance with the required procedure.

In Ginsberg, the Supreme Court extended the meaning of "illegally procured" beyond its ordinary connotation of unlawful action on the part of the procurer. But, there is no basis in reason or the legislative history of the denaturalization statute for stretching the term even further to encompass a situation where there was no concealment or misrepresentation on the part of the applicant or his witnesses and the grant of citizenship by the naturalization court upon the record before it was lawful in every respect. This is particularly so inasmuch as the Congress in 1952

---

3. It is not clear in what manner the defendant in Polites represented in his petition for naturalization that he had not been a member of an organization advocating the violent overthrow of the Govern-

ment of the United States inasmuch as no such statement appears in the portions of the petition quoted by the Court in its opinion.

amended the denaturalization statute to provide that denaturalization proceedings should be brought only on the ground that citizenship had been procured by concealment of a material fact or by willful misrepresentation. 66 Stat. 260, 8 U.S.C.A. § 1451.[4]

Judgment for Respondent. Present Findings.

---

4. The complaint in this case was filed on October 30, 1952 some eight weeks prior to the time that the amendment to the denaturalization statute became effective on December 24, 1952. Proceedings in this cause were stayed for several years at respondent's request pending the conclusion of a criminal proceeding in which he was a defendant. Although the amendment to the denaturalization statute applies by its terms to certificates of citizenship issued prior to its effective date, in the opinion of the Court, by reason of the savings clause in the amendatory statute it does not apply to denaturalization proceedings initiated prior to its effective date. See United States v. Matles-Friedman, D.C.E.D.N.Y.1953, 115 F.Supp. 261.