## ROSSI v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. November 25, 1925.)

No. 7080.

1. Poisons ☞9—Indictment for purchasing cocaine not in original stamped package need not allege accused was required to register and pay tax.

Count charging purchase of cocaine not purchased in or from an original stamped package is based on Harrison Anti-Narcotic Act, § 1, as re-enacted by Act Nov. 23, 1921 (Comp. St. Ann. Supp. 1923, § 6287g), and not on section 8 (Comp. St. § 6287n), and therefore need not allege that accused was required to register and pay a tax, and had not done so.

2. Criminal law ☞1036(8), 1044—Sufficiency of evidence not reviewable, in absence of demurrer or motion at trial.

The sufficiency of evidence to sustain a verdict is not reviewable on appeal, in absence of any demurrer or motion for directed verdict, calling such matter to the attention of the trial court.

3. **Criminal law** ⟨⟩785(4)—**Instruction as to weight to be given testimony of witnesses employed to secure evidence properly refused as too broad.**

Requested instruction as to weight to be given testimony of persons interested in or employed to find evidence against accused *held* properly refused, as being too broad.

4. **Criminal law** ⟨⟩510—**Conviction may be based on testimony of accomplice.**

Conviction in federal court may be based on testimony of accomplice.

5. **Criminal law** ⟨⟩789(5)—**Jury should be cautioned against too much reliance on testimony of accomplices.**

Where chief witness for state is an accomplice, jury should be instructed on that question, and should be cautioned against too much reliance on testimony of accomplice, and that there should be corroborating testimony to entitle it to credence.

6. **Criminal law** ⟨⟩1038(1), 1056(1)—**Instructions not considered on appeal, in absence of objections or exceptions.**

Instructions of court will not be considered on appeal, in absence of objections or exceptions taken to them by accused.

7. **Poisons** ⟨⟩9—**Evidence sufficient to show bottle containing cocaine was not stamped.**

In prosecution for violation of Harrison Anti-Narcotic Act (Comp. St. §§ 6287g–6287q), evidence *held* sufficient for jury to find that bottle containing cocaine sold by accused was not stamped according to law.

8. **Witnesses** ⟨⟩268(1)—**Cross-examination of state's chief witness held improperly restricted.**

On trial for violations of Harrison Anti-Narcotic Act (Comp. St. §§ 6287g–6287q), where a conviction depended largely on witness who was out of penitentiary on parole, and was the party whom officers were investigating when they secured evidence against accused, cross-examination of that witness *held* improperly restricted, as wide latitude should have been allowed.

9. **Criminal law** ⟨⟩720(5)—**Refusal to permit counsel for accused to refer to witness being given marked money to procure evidence not prejudicial.**

On trial for violation of Harrison Anti-Narcotic Act (Comp. St. §§ 6287g–6287q), refusal to permit counsel for accused to refer to fact that witness had been given marked money and sent out to procure evidence *held* not prejudicial error.

10. **Criminal law** ⟨⟩1170½(5)—**Improper restriction of cross-examination held not to require reversal.**

Where conviction for violation of Harrison Anti-Narcotic Act (Comp. St. §§ 6287g–6287q) depended on testimony of witness who was out of penitentiary on parole, refusal to permit that witness on cross-examination to answer where he was being kept after arrest, *held* not sufficiently prejudicial to require reversal.

11. **Criminal law** ⟨⟩1171(1)—**Prosecuting attorney's argument that he positively knew accused was not only guilty, but was head of illegal business, would be prejudicial.**

In prosecution for violation of Harrison Anti-Narcotic Act (Comp. St. §§ 6287g–6287q), argument of prosecuting attorney that it was his positive opinion from his own knowledge, not only that accused was guilty of selling the cocaine as charged, but that he was organizer and head of the "awful business," would be prejudicial and require reversal.

12. **Criminal law** ⟨⟩1128(2)—**Prejudicial argument of prosecuting attorney held not shown to have been made.**

Alleged improper argument, which was basis of motion for new trial, and which, if made, would have been flagrant error, *held* not shown by affidavit in support of motion to have been made, especially where court denied motion, raising presumption that he was satisfied that statement had not been made.

13. **Criminal law** ⟨⟩1172(2)—**Court's misstatement of evidence in instructing jury held to require reversal.**

In prosecution for violation of Harrison Anti-Narcotic Act (Comp. St. §§ 6287g–6287q), where conviction depended on testimony of another offender, who claimed to have purchased cocaine from accused, court's statement, in reviewing evidence, that another witness testified to seeing conversation between accused and state's chief witness, which conversation accused denied, and which in fact witness had not testified to seeing, *held* error requiring reversal.

14. **Criminal law** ⟨⟩1144(10)—**Court's order limiting argument presumed carried out.**

Court's order limiting argument of counsel is presumed to have been carried out, although the record fails to show that argument was confined to that limit.

15. **Criminal law** ⟨⟩711—**Order limiting argument to 15 minutes held abuse of discretion.**

In prosecution for violation of Harrison Anti-Narcotic Act (Comp. St. §§ 6287g–6287q), where there were 13 witnesses and evidence sufficient to cover 54 printed pages, and accused was sentenced for 7 years and to pay a $2,000 fine, order of court limiting argument to 15 minutes *held*, in view of constitutional right of accused to be heard by counsel, to amount to abuse of discretion, requiring reversal.

In Error to the District Court of the United States for the District of Colorado; J. Foster Symes, Judge.

Gene Rossi was convicted of violation of the Harrison Anti-Narcotic Act, and he brings error. Reversed and remanded.

J. W. Kelley, of Denver, Colo. (Jean Kelley and L. J. Crowley, both of Denver, Colo., on the brief), for plaintiff in error.

Clarence L. Ireland, Asst. U. S. Atty. (George Stephan, U. S. Atty., both of Denver, Colo., on the brief), for the United States.

Before LEWIS and KENYON, Circuit Judges, and MUNGER, District Judge.

KENYON, Circuit Judge. Plaintiff in error (hereinafter referred to as defendant) was tried and convicted in the District Court of the United States for the District of Colorado upon each of the three counts of an indictment, the first of which charged defendant with possession in Denver, Colo., on March 23, 1925, as a dealer, of a certain quantity of a derivative and preparation of coca leaves, to wit, cocaine; the second with the unlawful selling to one Carl West at the same time and place of a quantity of a derivative and preparation of coca leaves, to wit, cocaine; the third, at the same time and place with unlawfully purchasing from a person or persons to the grand jurors unknown, a quantity of a derivative and preparation of coca leaves, to wit, cocaine. The first two counts of the indictment alleged that defendant had not registered with the collector of internal revenue for the district of Colorado and had not paid the special tax required by law. The third count did not contain such averment, but did allege that said cocaine was not purchased in or from an original stamped package as required by law.

Defendant was sentenced to the penitentiary on the various counts for a period of seven years and fined in the sum of $2,000. The facts appearing from the evidence briefly are that on the evening of March 23, 1925, government narcotic agents in Denver, being suspicious that one Carl West was dealing in narcotics, made arrangements with one Ray McDonald to purchase some narcotics from said Carl West. McDonald made arrangements to meet West on the evening of March 23, 1925. He did so, and took him in his automobile to the vicinity of 3110 Osage street, North Denver. Carl Calabrese, who was a witness in the case, brought West to the meeting point with McDonald, and then proceeded in his automobile to a point near said 3110 Osage street, and was parked across the street therefrom when West and McDonald arrived. There is dispute in the testimony as to what subsequently happened. West testified he proceeded across the street to 3110, where he met defendant and purchased from him an ounce of cocaine. This is denied by the defendant, and he is corroborated to some extent by Calabrese. West delivered the cocaine to McDonald at his car, then went to the car of Calabrese, and drove with him back to Denver. West claimed to have had an arrangement with McDonald to the effect that he would meet him later in the evening for the purpose of trading him a half ounce of morphine for a half ounce of cocaine, the same being part of the cocaine which McDonald had purchased from West. When West came to meet McDonald at Fifteenth and Glenarm streets, about 9:30 on the evening of March 23, 1925, he was arrested by the narcotic officers, to whom McDonald had turned over the cocaine which he had purchased from West. The narcotic officers knew nothing about defendant, but were endeavoring to secure evidence against West. Calabrese and West were taken by the officers to the narcotic office, and West then admitted he had purchased from defendant the cocaine which he later sold to McDonald. Apparently he agreed with the narcotic officers that he would attempt to make another purchase of narcotics from defendant, and on the following day he went again under the direction of said officers to 3110 Osage street, they having arranged to have Ruth Vincent follow him to this place and observe what took place. On that day West did not purchase any narcotics from defendant, but claimed in his evidence that defendant agreed to sell him some later on that evening. This is a brief résumé of the evidence.

A number of questions are presented on the writ of error. We consider them separately.

[1] It is urged on the part of defendant that the third count of the indictment does not state an offense, because it does not allege that petitioner was one who was required to register and pay a tax and had not done so. Counsel for defendant confuse the argument by asserting and urging that count 3 is based on section 8 of the Harrison Anti-Narcotic Act (Comp. St. § 6287n), when in fact it is drawn under a provision of section 1 of said act reading as follows: "It shall be unlawful for any person to purchase, sell, dispense, or distribute any of the aforesaid drugs except in the original stamped package or from the original stamped package." U. S. Compiled Statutes, 1923 Cumulative Supplement, § 6287g, 42 Stat. 298. The words in section 8, "any person not registered," refer to persons who are required to register under section 1. United States v. Jin Fuey Moy, 241 U. S. 394, 36 S. Ct. 658, 60 L. Ed. 1061, Ann. Cas. 1917D, 854; Linder v. United States, 268 U. S. 5, 45 S. Ct. 446, 69 L. Ed. 819. In this and other courts, see Johnson v. United States (C. C. A.) 294 F. 753; Di

Salvo v. United States (C. C. A.) 2 F.(2d) 222; Bellomini v. United States (C. C. A.) 4 F.(2d) 104; Lamento v. United States (C. C. A.) 4 F.(2d) 901.

A different construction has been generally given by the courts to the words of section 1 before quoted, under which this indictment is brought. Referring thereto in United States v. Wong Sing, 260 U. S. 18, 20, 21, 43 S. Ct. 7, 8 (67 L. Ed. 105), the Supreme Court said: "The provisions quoted by the court have a certain relation, but they have also a certain independence. The first makes it 'unlawful for any person to purchase' the drugs; the second enumerates other persons who have a larger connection with the drugs and requires them to register the fact and pay the tax prescribed. There could be no object in requiring a purchaser of the drugs to register but it fulfilled the purpose of the law to forbid a purchase 'except in the original stamped package or from the original stamped package.' The requirement fortifies the other injunctions of the statute." See, also, Hayden v. United States (C. C. A.) 284 F. 852; Sam Wong v. United States (C. C. A.) 2 F.(2d) 969; Ballestrero v. United States (C. C. A.) 5 F.(2d) 503; Pierriero v. United States (C. C. A.) 271 F. 912.

It was not necessary to the validity of count 3 of this indictment that it allege defendant was required to register and pay a tax and had not done so. The count charged that the cocaine was not purchased by defendant in or from an original stamped package. That was sufficient. It may be observed that no objection was raised in the trial of the case to any count of the indictment. There was no demurrer nor motion with reference thereto, and the question seems to be first presented in this court.

We may note at this point that frequently throughout the argument of counsel for defendant it is suggested that a motion was made at the close of the government's evidence to dismiss the case. The record shows no such motion. At the close of the government's case the following occurred, as is shown by the record:

"Mr. Ireland: The government rests.

"Mr. Kelley: We move to dismiss the purchase.

"The Court: Motion denied.

"Mr. Kelley: Exception."

It may be that the record is in error, but as it stands there is nothing to show that any question was raised as to the indictment at any stage of the proceedings. The objection to count 3, however, being without merit, it is immaterial whether or not objection was raised; the question may be of some importance in considering other matters subsequently referred to.

[2] It is urged that the evidence on the first and second counts was not sufficient to warrant conviction; no witness testifying that petitioner was not registered and had not paid the tax. Count 1 is based on unlawful possession of narcotics. Count 2 on the sale thereof. Defendant claims that the presumption of unlawful possession arising from possession of the narcotics was destroyed when defendant took the stand and denied the purchase. It may be noted that, while defendant denied the purchase, he did not testify that he was a registered dealer under the act and had paid the tax. However, this question as to the sufficiency of the evidence is not before us. It was in no way raised during the trial. There were no exceptions to the court's charge. There is not even a specific assignment of error covering it. This court has many times held that the method to require a review of the sufficiency of the evidence is to move at the conclusion of all the evidence for a directed verdict on the ground of the insufficiency thereof to sustain a verdict. This was not done, nor was there any demurrer or motion of any kind to call such matter to the attention of the trial court. According to the long-settled practice of this court, the question is therefore not here for review, and defendant is in no position to ask of this court that it pass thereon. Gillette v. United States, 236 F. 215, 149 C. C. A. 405; Prosser et al. v. United States (C. C. A.) 265 F. 252; Bonner v. United States (C. C. A.) 275 F. 614; Trope v. United States (C. C. A.) 276 F. 348; Edwards v. United States (C. C. A.) 7 F.(2d) 357.

[3-5] Defendant claims that requested instructions numbered 1 and 2 should have been given to the jury. These were as follows:

"You are instructed that in weighing the testimony greater care should be used by the jury in relation to the testimony of persons who are interested in, or employed to find, evidence against the accused than in other cases, because of the natural and unavoidable tendency and bias of the mind of such persons to construe everything as evidence against the accused, and disregard everything which does not tend to support their preconceived opinions of the matter in which they are engaged.

"The court instructs the jury that one of the means recognized by law for impeaching

the veracity of witnesses is the introduction of persons as witnesses who testify that they are acquainted with the general reputation for truth and veracity of the person sought to be impeached, in the neighborhood in which he resides; and if the jury believe, from the evidence in this case, that the reputation for truth and veracity of any party or witness who has testified before you, in the neighborhood where he resides is bad, then the jury have a right to disregard the whole of such person's testimony and treat it as untrue, except so far as it is corroborated by other credible evidence, or by facts and circumstances proved on the trial."

The first instruction requested was entirely too broad, which is sufficient ground for its refusal. The second request was covered to some extent in the charge of the court, as follows:

"There has been evidence here of statements made by various witnesses that contradicted, or are alleged to have contradicted, those given by them on the witness stand. There is also evidence of character by various parties. You may consider that evidence, of course, along with the other evidence in the case, in making up your verdict."

As to offered instruction No. 1, we may say it was evidently on the theory that West was an accomplice, and that the jury should have been instructed on this question. There is no rule of law in the federal court preventing conviction on the testimony of an accomplice. Holmgren v. United States, 217 U. S. 509, 30 S. Ct. 588, 54 L. Ed. 861, 19 Ann. Cas. 778; Caminetti v. United States, 242 U. S. 470, 37 S. Ct. 192, 61 L. Ed. 442, L. R. A. 1917F, 502, Ann. Cas. 1917B, 1168; United States v. Murphy et al. (D. C.) 253 F. 404; Ray v. United States (C. C. A.) 265 F. 257; Wagman v. United States (C. C. A.) 269 F. 568, In Holmgren v. United States, supra, the Supreme Court said it was the better practice for courts to caution juries against too much reliance upon the testimony of accomplices, and that before credence was given to such evidence there should be corroborating testimony. This suggestion is a wise one for courts to follow.

[6] It is urged that the court erred in instructing the jury that mere possession of narcotics was sufficient to support a presumption of guilt. Whatever of merit there might be in this point, there was no objection or exception taken by defendant to the instructions of the court, and it is too late to first raise the question here.

[7] It is claimed by defendant there was no evidence that the bottle, Exhibit 1, containing the cocaine, was not stamped according to law when Carl West received it. We are satisfied there was evidence from which the jury could find that it was unstamped when it was sold to West. West's testimony shows that the defendant called his attention to the label being scratched off the bottle, although he says the bottle was sealed when he got it. The court stated in his instructions to the jury, "The exhibit introduced here (referring to the bottle) has no government stamps on it." We think there is nothing in this question. Furthermore, it was in no way raised in the trial of the case.

[8] Complaint is made that West should have been permitted on cross-examination to tell where he was being kept subsequent to the evening of March 23, 1925, being the time he claims to have sold the cocaine to McDonald. The question arose as follows:

"Q. Did you go back there that night? A. Yes, sir; I did.

"Q. Who went with you? A. Two federal officers; I don't know their names.

"Q. You were under arrest all this time, weren't you? A. Yes, sir; under guard.

"Q. Where have they been keeping you since you were arrested?

"Mr. Ireland: I object as incompetent, irrelevant, and immaterial.

"The Court: Objection sustained.

"Mr. Kelley: Save an exception."

We are inclined to think West should have been permitted to answer the question. The result of the trial depended largely on whether or not the jury believed West. He was the chief witness for the government, and was out of the penitentiary on parole. He was the party whom the government narcotic officers were investigating. They secured evidence against him, and in so doing unexpectedly obtained evidence against defendant. There should be wide latitude allowed in the cross-examination of West under these circumstances.

[9] There was no prejudicial error in the court's refusal to permit petitioner's counsel to refer to the fact that McDonald had been given marked money and had been sent out to procure evidence. It is doubtful if this question is properly preserved for review by this court, but we consider the matter of negligible importance.

[10] In the questions thus far considered, the only error was that of unduly restricting

the cross-examination of West. This was not, however, of sufficient prejudice under this record to warrant a reversal of the case. [11, 12] We refer to other questions raised of a more serious nature. It is claimed that the prosecuting attorney, in his closing argument, to the jury said: "It is my positive opinion, from my own knowledge, that this defendant is guilty; I am positive, from what I know myself, that he is not only guilty of selling this cocaine in Exhibit A, but that he is the organizer and head of that awful business here." If this statement was made by the prosecuting attorney in his closing argument to the jury, it would necessitate a reversal. A statement of this nature would be more effective with the jury than any evidence that had been introduced. The attempt is made by affidavit of defendant in support of the motion for new trial to set forth what the prosecuting attorney said, and the affidavit contains the statement quoted. It is doubtful if this in any way became a part of the record. Conceding that it did, however, the action of the court in overruling the motion for new trial must be taken as a finding that such statement was not made. It is to be presumed that, if the court was satisfied that such statement had been made, he would have granted a new trial, or at least would have instructed the jury as to the impropriety of such argument, and have attempted to cure, if possible, such a flagrant error. Further, in the arguments before this court, the assistant district attorney, Mr. Ireland, who is charged with making the statement, said to the court that no such statement, or anything like it, was made by him to the jury. Under all these circumstances, we cannot accept the affidavit of defendant as proof that such statement was made.

[13] West was the principal witness for the government as to the alleged sale. The meeting of West and defendant on March 23, 1925, was a vital part of the case. Defendant denied meeting him. He was corroborated to some extent by Calabrese. Miss Ruth Vincent, a witness for the defense, testified that on the request of the narcotic officer she followed West on the 24th day of March to Nineteenth and Osage streets, and saw him talking to defendant. She saw nothing of the occurrence on the 23d day of March. The court in its instructions said: "Then there is the testimony of Miss Vincent. If I recall her testimony correctly, Miss Vincent testified that West got out of the car, and went over and did meet Rossi and she saw Rossi and West talking togeth-

er over there on the sidewalk; but they were so far away from her that she couldn't hear a word they said, except I think she said they appeared to be talking in a friendly manner, and that Rossi either nodded his head—whether in a negative way or not I don't recall. You heard the evidence, so you recall what her evidence was, as well as I. So there is a conflict in the evidence of the defendant's witnesses, as well as conflict in the evidence for the government. So it simply comes down to the question, if you believe beyond a reasonable doubt that this defendant had that bottle in his possession over there that night, and that he gave it to West and took the money for it, then it is your duty to find him guilty." The court was then discussing the evidence as to the night when the alleged sale was made, which was March 23, 1925. Miss Vincent's testimony (she being a witness for the defense), under the erroneous statement by the court of the evidence, corroborated West as to his meeting with defendant on the night of the 23d of March, when in fact she testified the time she saw him was on the 24th. The effect on a jury of such statement by the court would be to practically destroy the evidence of defendant and of Calabrese as to defendant not meeting West on the night of the 23d. Juries give great weight to any statement by the court. It seems to us this erroneous statement of evidence by the court to the jury, with the inevitable result of great prejudice to the defense, was so grave an error as to require a reversal of the case.

[14, 15] Defendant claims error in the limitation by the court of time for argument to the jury to 15 minutes. At the close of the testimony the following colloquy occurred:

"The Court: How much time do you want to argue this case, gentlemen?

"Mr. Kelley: I would like to have 30 minutes.

"The Court: You may each have 15 minutes.

"Mr. Kelley: I except to the ruling of the court denying us further time."

While there is nothing in the record to specifically show that counsel did not argue more than 15 minutes, the presumption would be that the order of the court limiting the argument was carried out. In brief and before the court, counsel for the government seeks to justify such limitation, and there is no suggestion that any further time was taken by counsel for defendant. We accept the situation then as one where the court

limited the argument to the jury to 15 minutes upon a side, and that such order of the court was carried out.

The constitutional right of a defendant to be heard by counsel cannot be taken away by a court. The court has a right to limit within proper bounds the time of argument, in order to prevent abuse thereof; but it cannot place such a limit as to prevent a full and fair presentation of defendant's case to the jury by his counsel. The right to counsel is at least partially destroyed, if sufficient time is not allowed to fully and fairly present the facts. While it is a just criticism of criminal practice that too much time is consumed in the trial of cases, nevertheless it is of greater importance that those accused of crime have the right, within reasonable bounds and according to the rules of the court, conducive to orderly procedure of business, to present their defense, than that time be saved. If the limitation of the court as to argument does not impinge on the constitutional right to be heard, an appellate court will not ordinarily interfere therewith.

The question whether there has been an abuse of discretion in limiting the time of argument depends upon the facts and circumstances of each particular case. No exact rule can be laid down. The workings of human minds are different. Some lawyers require more time than others in presenting facts to a jury. The fact questions in a case may be simple, and there may be little evidence for discussion, or they may be complicated, and intricate and require a greater length of time. There were 13 witnesses in this case. The evidence covers 54 printed pages of the transcript of record. The result of the trial was a seven-year sentence for defendant in the penitentiary and a $2,000 fine. There were some vital questions of fact. The only direct testimony connecting defendant with the sale was that of West. The evidence shows that he had motives of revenge; that he also was in a situation where his own safety was involved, as he was on parole from the penitentiary and was guilty of sales of narcotics. His brother-in-law testified as to certain threats he had made against the defendant. Another witness testified that he stated, after the alleged sale, that he was getting even with somebody. These were matters that counsel could properly argue to the jury. The alleged meeting on the night of the 23d of March between West and defendant, the evidence of Calabrese substantiating defendant, the evidence of Miss Vincent as to occurrences on the 24th, all were matters that counsel would desire to present fully to the jury.

Alleged abuse of discretion in the limitation of arguments to the jury in criminal cases has received frequent consideration by the courts. In York v. United States (C. C. A.) 299 F. 778, where a trial occupied parts of two days, and the result depended largely on a question of veracity between defendant and a witness who claimed to have been an accomplice, the limitation of argument of defendant's counsel to 20 minutes was held to be an abuse of discretion. In Kolp v. United States (C. C. A.) 2 F.(2d) 953, a limitation of 10 minutes for argument over objection was held unreasonable. Other cases where the time fixed by the court for argument was held to be unreasonable are White v. People, 90 Ill. 117, 32 Am. Rep. 12 (9 witnesses, limitation 5 minutes); McLean v. State, 32 Tex. Cr. R. 521, 24 S. W. 898 (many witnesses, limitation 17 minutes); Jones v. Commonwealth, 87 Va. 63, 12 S. E. 226 (17 witnesses, limitation thirty minutes); Walker v. State, 32 Tex. Cr. R. 175, 22 S. W. 685 (12 witnesses, limitation 45 minutes); Huntley v. State (Tex. Cr. App.) 34 S. W. 923 (11 witnesses, limitation 15 minutes); People v. McMullen, 300 Ill. 383, 133 N. E. 328 (limitation 35 minutes); People v. Green, 99 Cal. 564, 34 P. 231 (24 witnesses, limitation one hour); State v. Rogoway, 45 Or. 601, 78 P. 987, 81 P. 234 (22 witnesses, limitation one hour). On the general subject, see, also, 12 Cyc. 568; 38 Cyc. p. 473.

We are forced to the conclusion from a careful examination of this record that the limitation of argument to the jury of 15 minutes was an unreasonable limitation and constituted prejudicial error. Our conclusion that the judgment in this case must be reversed is based on the two propositions, viz. the erroneous statement of the court to the jury as to the evidence of Miss Ruth Vincent, and the limitation of the argument to the jury to 15 minutes.

The judgment is reversed, and the case is remanded for further proceedings in harmony with this opinion.