## O'NEILL v. UNITED STATES.

Circuit Court of Appeals, Eighth Circuit. April 22, 1927.

No. 7118.

1. Indictment and information ⬡⟹110(30)—Indictment substantially in language of statute, specifying narcotics sold, amount thereof, and purchaser's name, held sufficient (Harrison Anti-Narcotic Act, § 1, as amended in 1919, and re-enacted in 1921 and 1924 [Comp. St. § 6287g]).

Indictment for violation of Harrison Anti-Narcotic Act, § 1, as amended by Act Feb. 24, 1919, § 1006, and re-enacted by Act Nov. 23, 1921, § 1005, and Act June 2, 1924, § 705 (Comp. St. § 6287g), in substantially language of statute, alleging the kind of narcotics sold, the amount thereof, and the name of the purchaser, held sufficient.

2. Indictment and information ⬡⟹125(20)—Count of indictment for sale and dispensing of narcotics held not duplicitous (Harrison Anti-Narcotic Act, § 1, as amended in 1919 and re-enacted in 1921 and 1924 [Comp. St. § 6287g]).

Count of indictment for violation of Harrison Anti-Narcotic Act, § 1, as amended by Act Feb. 24, 1919, § 1006, and re-enacted by Act Nov. 23, 1921, § 1005, and Act June 2, 1924, § 705 (Comp. St. § 6287g), charging sale of certain narcotics and also the dispensing of narcotic drugs, held not duplicitous.

3. Indictment and information ⬡⟹125(20)—Where statute denounces several things as crime, and connects them with disjunctive, pleader drawing indictment should connect such elements with a conjunctive.

Where a statute denounces several things as a crime and connects them with the disjunctive "or," the pleader in drawing an indictment should connect such elements by the conjunctive "and," and an indictment so drawn is not bad for duplicity.

4. Indictment and information ⬡⟹121(2)—Denial of bill of particulars, stating exact date, time, and place of alleged sale of narcotics, and other particulars, held not error (Harrison Anti-Narcotic Act, § 1, as amended in 1919, and re-enacted in 1921 and 1924 [Comp. St. § 6287g]).

In prosecution for violation of Harrison Anti-Narcotic Act, § 1, as amended by Act Feb. 24, 1919, § 1006, and re-enacted by Act Nov. 23, 1921, § 1005, and Act June 2, 1924, § 705 (Comp. St. § 6287g), court's refusal of bill of particulars, stating exact date, time, and place of alleged sale, which defendants were present, who delivered drugs, amount paid, etc., held not error.

5. Indictment and information ⬡⟹121(1)—Where indictment, though sufficient, is couched in language such that accused is liable to be suprised, remedy is by bill of particulars.

Where indictment sets forth facts constituting essential elements of offense with such certainty that it cannot be pronounced bad on motion to quash or demurrer, and yet is couched in such language that accused is liable to be surprised by the production of evidence for which he is unprepared, his remedy is a bill of particulars.

6. Indictment and information ⬡⟹121(1)—Bill of particulars is discretionary.

The grant or refusal of an application for a bill of particulars rests in the sound discretion of trial court.

7. Criminal law ⬡⟹414—Summary or digest of defendant's responses to question prepared by narcotic agent held inadmissible (Harrison Anti-Narcotic Act, § 1, as amended in 1919, and re-enacted in 1921 and 1924 [Comp. St. § 6287g]).

In prosecution for violation of Harrison Anti-Narcotic Act, § 1, as amended by Act Feb. 24, 1919, § 1006, and re-enacted by Act Nov. 23, 1921, § 1005, and Act June 2, 1924, § 705 (Comp. St. § 6287g) it was error to receive in evidence a summary or digest of statements made by defendant in response to questioning by narcotic agent.

8. Criminal law ⬡⟹406(1)—Statements or declarations by accused, tending with other evidence to raise inference of guilt, if voluntarily made, are admissible.

Statements or declarations by an accused from which, with other circumstances, an inference of guilt may be drawn, if shown to have been voluntarily made, are admissible against him as admissions.

9. Criminal law ⬡⟹409—Proof of defendant's admissions ought to show substance thereof, and not be mere summary.

Proof of alleged statements or admissions by defendant ought to show the substance and effect of such statements, and not be a mere digest or summary thereof.

10. Poisons ⬡⟹9—Evidence failing to show defendant person required to register held insufficient to sustain conviction under Narcotic Act (Harrison Anti-Narcotic Act, § 1, as amended in 1919 and re-enacted in 1921 and 1924 [Comp. St. § 6287g]).

Evidence failing to show that defendant was a person required to register under Harrison Anti-Narcotic Act, § 1, as amended by Act Feb. 24, 1919, § 1006, and re-enacted by Act Nov. 23, 1921, § 1005, and Act June 2, 1924, § 705 (Comp. St. § 6287g), held insufficient to sustain conviction for violation thereof.

11. **Poisons** ⊜⟹9—Possession of unstamped drugs held not prima facie evidence of violation of particular provision of Anti-Narcotic Act (Harrison Anti-Narcotic Act, § 1, as amended in 1919, and re-enacted in 1921 and 1924 [Comp. St. § 6287g]).

The possession by defendant of unstamped drugs is not prima facie evidence of violation of the first penal provision of Harrison Anti-Narcotic Act, § 1, as amended by Act Feb. 24, 1919, § 1006, and re-enacted by Act Nov. 23, 1921, § 1005, and Act June 2, 1924, § 705 (Comp. St. § 6287g), notwithstanding language following the second penal provision thereof.

12. **Constitutional law** ⊜⟹55—Within certain limitations, Congress or state Legislature may enact that certain facts, when proved, shall be prima facie evidence of existence of main fact in issue.

Congress or a state Legislature may properly enact that certain acts, when proved, shall be prima facie evidence of existence of a main fact in issue, provided (1) there be some rational connection between fact proved and ultimate fact presumed; (2) the inference from the fact proved from the other be not unreasonable or unnatural; (3) the accused be not deprived of proper opportunity to present defense to main fact so presumed.

In Error to the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Frank O'Neill was convicted of violating the Harrison Anti-Narcotic Act, and he brings error. Judgment reversed, and cause remanded, with instructions.

E. D. O'Sullivan, of Omaha, Neb. (W. N. Jamieson and C. J. Southard, both of Omaha, Neb., on the brief), for plaintiff in error.

James C. Kinsler, U. S. Atty., of Omaha, Neb. (Ambrose C. Epperson and Andrew C. Scott, Asst. U. S. Attys., both of Omaha, Neb., William J. Froelich, Asst. U. S. Atty., of O'Neill, Neb., and George A. Keyser, Asst. U. S. Atty., of Omaha, Neb., on the brief), for the United States.

Before LEWIS and BOOTH, Circuit Judges, and PHILLIPS, District Judge.

PHILLIPS, District Judge. Frank O'Neill was indicted, tried, convicted, and sentenced for a violation of section 1 of the Harrison Anti-Narcotic Act. Act Dec. 17, 1914 (38 Stat. 785), amended February 24, 1919 (40 Stat. 1130), re-enacted November 23, 1921 (42 Stat. 298), and re-enacted June 2, 1924 (43 Stat. 328 [Comp. St. § 6287g]). The conviction was upon the first count of the indictment. The charging part of this count reads as follows:

"That Sam House, Pat Burkrey and Frank O'Neill, late of the district of Nebraska, heretofore, to wit, on or about the twenty fifth day of July, in the year nineteen hundred and twenty four, at Omaha, in the county of Douglas, in the Omaha division of the district of Nebraska, circuit aforesaid, and within the jurisdiction of this court then and there being, being then and there persons required under the provisions of the act of Congress of the United States of America of December 17, 1914, known as the Harrison Anti-Narcotic Act [38 Stat. 785], as amended by the act of Congress of the United States of America approved February 24, 1919, and known as the Revenue Act of 1918, [40 Stat. 1057], to register with the collector of internal revenue for the district of Nebraska, and to pay the special tax as therein required, that is to say, the said defendants being then and there persons who dealt in, sold and dispensed narcotic drugs, and they, the said defendants, Sam House, Pat Burkrey and Frank O'Neill not having so registered and paid said special tax, did then and there unlawfully, willfully, knowingly and feloniously sell and dispense to one Richie Feinberg certain narcotic drugs, to wit, about three ounces of morphine, a derivative of opium."

The material facts are these:

One Richie Feinberg was employed by the narcotic agents as an informer. Feinberg was an addict. He testified that on July 25, 1924, at Omaha, Frank O'Neill agreed to sell him three ounces of morphine for $200; that shortly after such agreement, they went to the Carlton Hotel; that he there paid O'Neill the sum of $200 in currency; that they then went to the Rent-a-Ford Garage, where O'Neill rented a Ford car; that from there they drove to a point near the gas plant in Omaha; that O'Neill left Feinberg at a corner near the gas plant; that O'Neill returned in about 15 minutes; that Feinberg again got into the car with O'Neill; and that thereupon O'Neill delivered to him the three ounces of morphine. This testimony of Feinberg was corroborated in certain particulars by the testimony of the narcotic agents. O'Neill was arrested on July 31, 1924. He was taken to the office of the narcotic agents in the Federal Building at Omaha, Neb., and was there questioned by Narcotic Agent Manning and Narcotic Inspectors Matthews, Carroll, and Hesse. Agent Manning undertook to make a summary or digest of the statements made by O'Neill in response to the questioning of the officers. This summary or digest was

offered and received in evidence over the objection of counsel for O'Neill. The testimony showed that the morphine purchased by Feinberg was neither in an original stamped package nor from an original stamped package.

O'Neill and his codefendants demurred to the first count of the indictment, on the following grounds:

First, that it failed to allege the exact date of the sale, the time of day when the sale was made, the exact place where the sale was made, and the price paid;

Second, that it was vague and indefinite, and did not allege sufficient facts and circumstances to identify the particular offense sought to be charged;

Third, that it was duplicitous, in that it charged the sale and also the dispensing of narcotic drugs.

The demurrer was overruled and this ruling is assigned as error.

[1] It will be noted that count 1 of the indictment charges that O'Neill, on or about July 25, 1924, at Omaha, was a person who dealt in, sold and dispensed narcotic drugs, and was a person required to register under the provisions of the act and pay the special tax therein required, and that at such time and place O'Neill, not having so registered and paid the special tax, did sell and dispense to Feinberg certain narcotic drugs, to wit, three ounces of morphine.

The crime sought to be charged is a violation of the first penal provision of section 1 of the Harrison Anti-Narcotic Act. The statute describes and defines all the elements of the offense. Count 1 charges the offense substantially in the language of the statute. No general or common-law terms are employed. The indictment therefore meets the requirements of the general rule for charging a statutory crime. Ackley v. U. S. (C. C. A. 8) 200 F. 217, 221; Rupert v. U. S. (C. C. A. 8) 181 F. 87, 90; Hardesty v. U. S. (C. C. A. 6) 168 F. 25, 28, 29; Jelke v. U. S. (C. C. A. 7) 255 F. 264, 274, 275; Newton Tea & Spice Co. v. U. S. (C. C. A. 6) 288 F. 475, 478. The particular kind of narcotics sold, the amount thereof, and the name of the purchaser are alleged. These allegations sufficiently earmark and identify the particular offense. Count 1 charged the essential elements of the offense with sufficient certainty to enable O'Neill to prepare his defense, and after judgment to plead the record and judgment in bar of a further prosecution for the same offense.

[2, 3] Count 1 is not duplicitous. Where a statute denounces several things as a crime and connects them with the disjunctive "or," the pleader, in drawing an indictment, should connect them by the conjunctive "and." An indictment so drawn is not bad for duplicity, and where the testimony establishes the guilt of the defendant as to any one of the things charged conviction may follow. Ackley v. U. S., supra; Shepard v. U. S. (C. C. A. 9) 236 F. 73, 82; Simpson v. U. S. (C. C. A. 9) 229 F. 940, 942, 943; Rowan v. U. S. (C. C. A. 5) 281 F. 137, 138, 139; Jacobsen v. U. S. (C. C. A. 7) 272 F. 399; Crain v. U. S., 162 U. S. 625, 634, 635, 636, 16 S. Ct. 952, 40 L. Ed. 1097.

We conclude that count 1 of the indictment was sufficient and that the demurrer was properly overruled.

[4] The defendant also filed a motion for a bill of particulars. This motion was denied, and the ruling is assigned as error. By this motion O'Neill sought an order requiring the government to state the exact date of the sale, the exact time of day of the sale, the exact place of the sale, which defendants were present at the sale, who delivered the drugs, the amount of money paid, who paid the money, who furnished the money to the purchaser, what kind of container the morphine was in, the markings on the container, the copy of the label on the package, whether Feinberg was an informer, any evidence the government relied on to prove O'Neill was a person who dealt in narcotic drugs, any prior sales which the government relied on, and who was present when such sales were made.

[5, 6] Where an indictment sets forth the facts constituting the essential elements of the offense with such certainty that it cannot be pronounced bad on motion to quash or demurrer, and yet is couched in such language that the accused is liable to be surprised by the production of evidence for which he is unprepared, his remedy is a bill of particulars. Billingsley v. U. S. (C. C. A. 8) 16 F. (2d) 754. The allowance or refusal of an application for a bill of particulars rests in the sound discretion of the trial court. Wong Tai v. U. S. (opinion filed January 3, 1927) 47 S. Ct. 300, 71 L. Ed. ——; Billingsley v. U. S., supra. We cannot upon an examination of the record in this case, say that the court abused its discretion in denying the motion for a bill of particulars. The record does not indicate that O'Neill was taken by surprise in the progress of the trial, or that his substantial rights were in

any wise prejudiced by the denial of the motion. Wong Tai v. U. S., supra; Connors v. U. S., 158 U. S. 408, 411, 15 S. Ct. 951, 39 L. Ed. 1033; Armour Packing Co. v. U. S., 209 U. S. 56, 84, 28 S. Ct. 428, 52 L. Ed. 681; New York Central R. R. v. U. S., 212 U. S. 481, 497, 29 S. Ct. 304, 53 L. Ed. 613.

[7-9] The introduction in evidence of the summary, which Manning prepared, of the statements given by O'Neill, is also assigned as error. Statements and declarations by an accused, from which, in connection with other evidence of surrounding circumstances, an inference of guilt may be drawn, if shown to have been made voluntarily (Bram v. U. S., 168 U. S. 532, 18 S. Ct. 183, 42 L. Ed. 568; 16 C. J. p. 628, § 1247), are admissible against him as admissions. (U. S. v. Larkin, 4 Cranch, C. C. 617, Fed. Cas. No. 15,561; State v. Jackett, 85 Kan. 427, 116 P. 509; State v. Mariano, 37 R. I. 168, 91 A. 21, 27; Jones v. State, 13 Ala. App. 10, 68 So. 690, 695; 16 C. J. p. 626, § 1243). But the proof offered to establish such statements or admissions ought to show, at least, the substance and effect of the statement, and not a mere digest or summary thereof. Grubey v. National Bank of Illinois, 35 Ill. App. 354. It is a well-settled principle of the law of evidence that a witness who has heard a statement or conversation should not be permitted to state his conclusions as to what was stated or admitted. Atchison v. King, 9 Kan. 550; Mather v. Parsons, 32 Hun (N. Y.) 338, 345, 346; Wolverton v. Saranac, 171 Mich. 419, 137 N. W. 211, 212; Irwin v. Nolde, 164 Pa. 205, 30 A. 246; Snell v. Snow, 54 Mass. (13 Metc.) 278, 282, 46 Am. Dec. 730; Henderson v. Brunson, 141 Ala. 674, 37 So. 549; McKee Live Stock Co. v. Menzel, 70 Colo. 308, 201 P. 52, 53; Boone v. Rickard, 125 Ill. App. 438; Grubey v. National Bank of Illinois, supra. The summary prepared by Manning and introduced in evidence in the instant case was neither a verbatim transcript of what O'Neill said, nor the substance and effect of what he said. It was not O'Neill's statement, but Manning's statement of the conclusions and deductions arrived at by him from the conversation between O'Neill and the narcotic officers. It follows that its admission in evidence was erroneous.

[10] At the close of the evidence, counsel for O'Neill moved the court to instruct the jury to return a verdict of not guilty upon count 1 of the indictment. The motion was denied, and this ruling is assigned as error.

The portions of section 1 of the Harrison Anti-Narcotic Act material here are set out in footnote No. 1.[1]

It will be observed that this section defines two distinct offenses. The first penal

[1] "On or before July 1 of each year every person who imports, manufactures, produces, compounds, sells, deals in, dispenses, or gives away opium or coca leaves, or any compound, manufacture, salt, derivative, or preparation thereof, shall register with the collector of internal revenue of the district his name or style, place of business and place or places where such business is to be carried on, and pay the special taxes hereinafter provided;

"Every person who on January 1, 1919, is engaged in any of the activities above enumerated, or who between such date and the passage of this act first engaged in any of such activities, shall within thirty days after the passage of this act make like registration; and shall pay the proportionate part of the tax for the period ending June 30, 1919; and

"Every person who first engages in any of such activities after the passage of this act shall immediately make like registration and pay the proportionate part of the tax for the period ending on the following June 30th;

"Importers, manufacturers, producers or compounders, $24 per annum; wholesale dealers, $12 per annum; retail dealers, $6 per annum; physicians, dentists, veterinary surgeons, and other practitioners lawfully entitled to distribute, dispense, give away, or administer any of the aforesaid drugs to patients upon whom they in the course of their professional practice are in attendance, shall pay $3 per annum.

"Every person who imports, manufactures, compounds, or otherwise produces for sale or distribution any of the aforesaid drugs shall be deemed to be an importer, manufacturer, or producer.

"Every person who sells or offers for sale any of said drugs in the original stamped packages, as hereinafter provided, shall be deemed a wholesale dealer.

"Every person who sells or dispenses from original stamped packages, as hereinafter provided, shall be deemed a retail dealer:

*    *    *    *    *    *

"It shall be unlawful for any person required to register under the provisions of this act to import, manufacture, produce, compound, sell, deal in, dispense, distribute, administer, or give away any of the aforesaid drugs without having registered and paid the special tax as imposed by this section.

*    *    *    *    *    *

"That there shall be levied, assessed, collected, and paid upon opium, coca leaves, any compound, salt, derivative, or preparation thereof, produced in or imported into the United States, and sold, or removed for consumption or sale, an internal revenue tax at the rate of 1 cent per ounce, and any fraction of an ounce in a package shall be taxed as an ounce, such tax to be paid by the importer, manufacturer, producer, or compounder thereof, and to be represented by appropriate stamps, to be provided by the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury; and the stamps herein provided shall be so affixed to the bottle or other container as to

provision makes it unlawful for any person required to register under the provisions of the act to import, manufacture, produce, compound, sell, deal in, dispense, distribute, administer, or give away any of such drugs without having registered and paid the special tax imposed by section 1. The second penal provision makes it unlawful for any person to purchase, sell, dispense, or distribute any of such drugs, except in the original stamped package or from the original stamped package.

It will be further observed that section 1 provides that importers, manufacturers, producers and compounders shall register and pay a tax of $24 per annum, that wholesale dealers shall register and pay a tax of $12 per annum, that retail dealers shall register and pay a tax of $6 per annum, and that physicians and other practitioners lawfully entitled to dispense, give away or administer any such drugs shall register and pay a tax of $3 per annum. It further provides that "every person who imports, manufactures, compounds, or otherwise produces for sale or distribution any of" such "drugs shall be deemed to be an importer, manufacturer, or producer," that "every person who sells or offers for sale any of said drugs in the original stamped packages, * * * shall be deemed a wholesale dealer," and that "every person who sells or dispenses from original stamped packages * * * shall be deemed a retail dealer." It further provides that "the possession of any original stamped package containing any of the aforesaid drugs by any person who has not registered and paid special taxes as required by this section shall be prima facie evidence of liability to such special tax."

It will be noted that the only provision for registry and payment of tax by dealers is limited to wholesale dealers who sell in the *original stamped package,* and retail dealers who sell from the *original stamped*

securely seal the stopper, covering, or wrapper thereof.

\*    \*    \*    \*    \*

"It shall be unlawful for any person to purchase, sell, dispense, or distribute any of the aforesaid drugs except in the original stamped package or from the original stamped package; and the absence of appropriate tax-paid stamps from any of the aforesaid drugs shall be prima facie evidence of a violation of this section by the person in whose possession same may be found; and the possession of any original stamped package containing any of the aforesaid drugs by any person who has not registered and paid special taxes as required by this section shall be prima facie evidence of liability to such special tax."

U. S. Comp. St. 1925, c. 7f, § 6287g.

*package.* It will be further noted that the provision creating a presumption of liability for registry and payment of tax is limited to persons in possession of a *stamped package.* We think that it was the intent of Congress by these provisions of section 1 requiring registration and the payment of a special tax, to regulate and control the sale of drugs in or from stamped packages as distinguished from sales in or from unstamped packages, and that the only persons required to register or that are eligible to register under the act, are importers, manufacturers, producers, wholesale dealers and retail dealers, as therein defined, and physicians and other persons entitled to distribute, dispense, give away or administer such drugs. Weaver v. U. S. (C. C. A. 6) 15 F.(2d) 38.

This construction of section 1 is further strengthened by a consideration of the second penal provision thereof. This provision of section 1 makes it unlawful for any person to sell or purchase in or from an unstamped package. It is not limited to persons required to register, but makes it unlawful for any person, whether registered or not to purchase or sell such drugs except from or in the original stamped package. U. S. v. Wong Sing, 260 U. S. 18, 43 S. Ct. 7, 67 L. Ed. 105; Rossi v. U. S. (C. C. A.) 9 F.(2d) 362, 365; Ng Sing v. U. S. (C. C. A. 9) 8 F.(2d) 919, 922; Bethea v. U. S. (C. C. A. 7) 1 F.(2d) 290, 291; Sam Wong v. U. S. (C. C. A. 9) 2 F.(2d) 969; Wong Lung Sing v. U. S. (C. C. A. 9) 3 F. (2d) 780, 782; Hayden v. U. S. (C. C. A. 5) 284 F. 852; Weaver v. U. S., supra.

Under section 1, narcotic drugs are placed in two classifications, those contained in stamped packages, and those contained in unstamped packages. Stamped drugs may be lawfully sold by persons who have duly registered and paid the tax provided by the act. Unstamped drugs may not be lawfully sold by any person, whether registered or unregistered. Thus it will be seen that Congress has undertaken to restrict lawful sales of narcotics to drugs that are contained in stamped packages and are sold through dealers who have registered and paid the special tax. The purpose of the first penal provision is to make the law effective as a revenue measure by making it unlawful for a person eligible and required to register and pay the special tax to sell without having so registered and paid such tax. The purpose of the second penal provision is not only to enforce the payment of the stamp tax, but to bring the traffic in the drugs within the lim-

itations contemplated by Congress, by limiting lawful sales to stamped drugs, the dealers in which are required to register.

Count 1 of the indictment charges a violation of the first penal provision of section 1.

The morphine sold in the case at bar was neither in nor from the original stamped package. The sale to Feinberg is the sole evidence relied upon by the government to show that O'Neill was a dealer and a person required to register under the act. If O'Neill was dealing in unstamped drugs, he was neither a wholesale dealer nor a retail dealer as defined in section 1, and was therefore not a person required to register under the act. If this be true, then the sale by O'Neill to Feinberg violated the second, and not the first, penal provision of the section. [11] The contention is made that the possession by O'Neill of the unstamped drugs is prima facie evidence of the violation of the first penal provision of section 1. This contention is predicated upon the language which follows the second penal provision and reads as follows: "And the absence of appropriate tax-paid stamps from any of the aforesaid drugs shall be prima facie evidence of a violation of this section by the person in whose possession same may be found." This contention finds support in the case of Pierriero v. U. S. (C. C. A. 4) 271 F. 912. The contention is made that the provision of section 1 last above quoted applies only to the second penal provision of the act. If the provisions for registration and payment of tax by dealers is limited to persons who sell in or from the original stamped package, then to construe the provision of the act last above quoted as applicable to the first, as well as the second penal provision, would be to declare that possession by a person of unstamped drugs is prima facie evidence of the fact that he deals in stamped drugs. This would be a wholly illogical and irrational presumption; it would be so unreasonable as to be a purely arbitrary mandate. The fact that one possesses unstamped drugs instead of indicating that he deals in stamped drugs, indicates just the opposite.
[12] The general principle is well recognized that even in criminal prosecutions, Congress or a state Legislature may with certain limitations enact that when certain facts have been proved they shall be prima facie evidence of the existence of the main fact in question. 12 C. J. p. 823, § 285. The limitations are these: There must be some rational connection between the fact proved and the ultimate fact presumed; the inference of the existence of the ultimate fact from proof of the other fact must not be so unreasonable or unnatural as to be a purely arbitrary mandate; and the accused must not be deprived of a proper opportunity to present his defense to the main fact so presumed and have the case submitted upon all the evidence to the jury for its decision. People v. Cannon, 139 N. Y. 32, 34 N. E. 759, 762, 36 Am. St. Rep. 668; Hawes v. Georgia, 258 U. S. 1, 4, 42 S. Ct. 204, 66 L. Ed. 431; Bailey v. Alabama, 219 U. S. 219, 238, 239, 31 S. Ct. 145, 55 L. Ed. 191; McFarland v. American Sugar Refining Co., 241 U. S. 79, 86, 36 S. Ct. 498, 60 L. Ed. 899; Mobile, Jackson & Kansas City R. R. Co. v. Turnipseed, 219 U. S. 35, 43, 31 S. Ct. 136, 55 L. Ed. 78, 32 L. R. A. (N. S.) 226, Ann. Cas. 1912A, 463; U. S. v. Luria (D. C. N. Y.) 184 F. 643, 647, 648; Hall v. Johnson, 87 Or. 21, 169 P. 515, 516, Ann. Cas. 1918E, 49.

In McFarland v. Sugar Co., supra, the court said:

"It is 'essential that there shall be some rational connection between the fact proved and the ultimate fact presumed, and that the inference of one fact from proof of another shall not be so unreasonable as to be a purely arbitrary mandate.'"

In Bailey v. Alabama, supra, the court said:

"This court has frequently recognized the general power of every Legislature to prescribe the evidence which shall be received, and the effect of that evidence in the courts of its own government. Fong Yue Ting v. United States, 149 U. S. 698, 749 [13 S. Ct. 1016, 37 L. Ed. 905]. In the exercise of this power numerous statutes have been enacted providing that proof of one fact shall be prima facie evidence of the main fact in issue; and where the inference is not purely arbitrary and there is a rational relation between the two facts, and the accused is not deprived of a proper opportunity to submit all the facts bearing upon the issue, it has been held that such statutes do not violate the requirements of due process of law."

In People v. Cannon, supra, the court said:

"It cannot be disputed that the courts of this and other states are committed to the general principle that, even in criminal prosecutions, the legislature may, with some limitations, enact that when certain facts have been proved they shall be prima facie evidence of the existence of the main fact in

question. See cases cited in [Board Com'rs Excise of Auburn v. Merchant], 103 N. Y. 143, 8 N. E. 484 [57 Am. Rep. 705]. The limitations are that the fact upon which the presumption is to rest must have some fair relation to, or natural connection with, the main fact. The inference of the existence of the main fact, because of the existence of the fact actually proved, must not be merely and purely arbitrary, or wholly unreasonable, unnatural, or extraordinary; and the accused must have, in each case, a fair opportunity to make his defense, and to submit the whole case to the jury, to be decided by it after it has weighed all the evidence, and given such weight to the presumption as to it shall seem proper."

In our opinion, Congress could not lawfully enact that possession of unstamped narcotic drugs should be prima facie evidence of a violation of the first penal provision of section 1. We do not think it intended so to do by the language of section 1 last above quoted. We think that language can properly be construed to apply only to the second penal provision which immediately precedes it.

It follows from the foregoing that the government wholly failed to prove that O'Neill was a person required to register under section 1 of the act, and thus failed to establish a material element of the offense charged in count 1 of the indictment. We conclude therefore that the court erred in overruling the motion to direct the jury to find O'Neill not guilty on the first count of the indictment.

The judgment is reversed and the cause remanded, with instructions to grant O'Neill a new trial.