Judson E. HOLT, Appellant,

v.

UNITED STATES of America,
Appellee.

Judson Edgar HOLT, Appellant,

v.

UNITED STATES of America,
Appellee.

Nos. 16029, 16131.

United States Court of Appeals
Eighth Circuit.

June 16, 1959.

Rehearing Denied July 20, 1959.

Alan C. Kohn, St. Louis, Mo. (appointed by the Court), for appellant.

John A. Newton, Asst. U. S. Atty., St. Louis, Mo. (Harry Richards, U. S. Atty., St. Louis, Mo., on the brief), for appellee.

Before GARDNER, Chief Judge, and JOHNSEN and VOGEL, Circuit Judges.

GARDNER, Chief Judge.

Appellant was charged, tried and convicted on an information of four counts charging violations of certain provisions of the Narcotic Act, to wit, Sec. 4741(a) and Sec. 4742(a) of Title 26, United States Code. In the course of this opinion we shall refer to appellant as defendant. The information on which defendant was tried was filed November 27, 1957, at which time defendant appeared in person and by Mr. Bernard Mellman,

counsel of his own choice. After the disposition of certain pre-trial motions the court, on January 17, 1958, set the case down for trial for March 5, 1958. On March 4, 1958, at 9:30 a. m., the day before trial was scheduled to commence, defendant's attorney, Mr. Mellman, had a conference with the court. Present at the conference was Alphonse J. Lynch. At the conference the court was informed that defendant had advised Mr. Mellman that he would seek other counsel and that he had talked to Mr. Lynch who agreed to represent defendant but wished a continuance in order to have time to prepare for trial. In response to this suggestion the court stated that it had called and set the docket and that there was no time available to which the case could be passed and re-set. Moreover, the case had been set for a day certain for better than six weeks. Therefore, the court was not disposed to grant a continuance. The next day, March 5, 1958, the case was called for trial and Mr. Lynch entered his and moved for a continuance on the ground that he had not had sufficient opportunity to prepare for trial. The court denied the motion for a continuance. It also granted Mr. Mellman's request that he be permitted not to be present at the trial but the court stated that Mr. Mellman would have to remain if Mr. Lynch insisted. The court also said that after the Government had presented its case, the court would—and it did—lay the case over until the following day to give Mr. Lynch opportunity to prepare his defense. Mr. Mellman was absent during the entire trial. After recessing the trial following the Government's case, defendant presented his defense.

While the defendant at the close of all the evidence moved for an acquittal, which the court overruled, he does not here contend that the evidence is insufficient to sustain the verdict and for that reason we deem it unnecessary to detail the substance of the evidence produced by the Government. Under defendant's plea of not guilty he introduced evidence of an alibi which, if believed by the jury,

would have warranted his acquittal. There are no contentions that the court erred in any of its rulings as to the admissibility of evidence, nor is there any contention that the court erred in its general instructions to the jury, but it is claimed that the court in the course of the argument of counsel for defense erred in stating to the jury that counsel had misstated the evidence and in instructing the jury that he had done so. The jury found the defendant guilty on all four counts of the information and the court, pursuant to this verdict, sentenced the defendant on each of the counts, providing that the sentences should run concurrently. After the entry of judgment defendant moved for a new trial on the ground of newly discovered evidence, which the court denied, and this appeal is from the judgment of conviction and from the order denying defendant's motion for new trial on the ground of newly discovered evidence.

■■ It is urged that the court erred in refusing to grant defendant a continuance. As heretofore recited, this prosecution was instituted by the filing of an information on November 27, 1957. At that time defendant appeared in person and by counsel of his own choice. Counsel continued to represent him and presented certain pre-trial motions not here material. On January 17, 1958, the case was set down for trial on March 5, 1958. Defendant was still represented by his counsel and continued to be so represented at least until the day before the date set for trial. At that time his counsel asked permission to withdraw, stating that defendant wished to employ other counsel. Other counsel was present at the time of this request and entered an appearance as co-counsel. The court denied the request to withdraw but permitted Mr. Lynch to enter his appearance as co-counsel for the defendant but stated that Mr. Mellman, defendant's then counsel, was still in the case. The court granted him permission to retire from the courtroom, but stated that, " * * * as Mr. Mellman has had the case since the matter was first submitted to the Court,

if counsel needs Mr. Mellman I will ask him to be where he can get him here, or if he wants him here, the Court will insist that he be here * * *." Mr. Lynch, the new counsel, made no request that Mr. Mellman be retained in the case. There is nothing in the record indicating that the defendant was prejudiced by the ruling of the court denying a continuance. The motion was addressed to the discretion of the court and we think the discretion was wisely exercised in denying the motion.

■ It is contended that the court erred in sustaining the Government's objection to defense counsel's argument and in instructing the jury that counsel had misstated certain evidence. The incident is reflected in the record as follows. Mr. Lynch, in the course of his argument to the jury, said:

"There is just one other factor I would like to point out to you in that testimony. Agent Theisen and Agent Costarella said they were seated about one hundred fifty or one hundred feet away from this incident. They were looking out of the back window of a car. They stated that they saw, or we got the impression, or at least I did, I don't know whether you did or not, the testimony seems to indicate they were looking consistently in that direction from about four thirty until nine o'clock. They stated that they saw this defendant come up there sometime about six forty-five or a quarter to seven. You remember the testimony this Reporter gave that Marina stated that McFadden came up there about six thirty or six forty-five."

United States Attorney: "That, I know is not true."

The Court: "The objection will be sustained. Lady and gentlemen, the testimony is that McFadden came around seven or seven thirty. That is the testimony Mr. Armbruster read to you."

To understand the significance of this incident requires a further examination of the testimony. Government witness Marina was the person through whom all the sales and deliveries involved in each of the four counts of the information were had. He was himself a narcotic addict, had in fact been convicted of such and had recently had trouble with the defendant. He had as a part of the same transactions here involved been used as a go-between in buying narcotics from one McFadden. In the trial of McFadden, Marina had testified that at the time and place involved in the instant case, McFadden came onto the lot where these transactions took place, at about 6:30 p. m., and the Government witnesses had testified in the instant case that the transaction with the defendant at this same place occurred at 6:30 p. m. or 6:45 p. m., and it was the contention of counsel for the defense that Marina's testimony was unworthy of belief and that the two other Government witnesses who corroborated his testimony in this regard mistook McFadden for the defendant. These witnesses were in fact sitting in an automobile some one hundred fifty feet distant, looking through the rear window opening of a convertible automobile. It was dark enough so that lights were on at the gas station where the transactions took place.

As has been noted, the defendant had substantial proof of an alibi. Defendant's counsel in his argument was presenting this discrepancy between the testimony given by Marina at the McFadden trial and that given in the trial of the instant case, and if Marina told the truth in the McFadden case, the transaction to which the Government witnesses testified may well have been between Marina and McFadden rather than between Marina and the defendant. The Government Attorney challenged the correctness of counsel's statement of the testimony as given in the McFadden case. The objection was not only sustained but the court positively instructed that the evidence in the McFadden case showed that McFadden arrived on the scene about an hour

later. This was an unfortunate but serious mistake both on the part of the United States Attorney and the court. The argument was a legitimate one based upon the evidence, and the ruling of the court in effect told the jury that counsel was misstating the evidence, and thus discredited him before the jury. By this ruling the court did not leave to the jury to determine what the fact was with reference to when McFadden appeared upon the scene. The removal by the court of this fact issue from the consideration of the jury wrongfully invaded the jury's exclusive province to determine the facts for itself, and this ruling as to the evidence on this question completely destroyed counsel's argument that the Government witnesses may have mistaken McFadden for the defendant. Rossi v. United States, 8 Cir., 9 F.2d 362; Cook v. United States, 8 Cir., 18 F.2d 50.

The facts in Rossi v. United States, supra, are strikingly similar to those in the instant case. In that case defendant was convicted of narcotic violations and sentenced to seven years imprisonment. At his trial, one West testified that he and defendant consummated a sale of narcotics on March 23, 1925. The defendant denied meeting West on March 23 and was corroborated to some extent by one Calabrese. Miss Ruth Vincent, a witness for the defense, testified that she knew nothing of what happened on March 23 but that she observed a meeting of West and defendant on March 24. The court mistakenly charged the jury that Miss Vincent testified that she observed a meeting of West and defendant on March 23 and that this corroborated West's testimony. This Court reversed the judgment of conviction in that case because of the erroneous statement to the jury that Miss Vincent saw West and defendant on March 23, the evidence being that Miss Vincent saw West and defendant on March 24. In the course of the opinion it is said, inter alia [9 F.2d 367]:

"Juries give great weight to any statement by the court. It seems to us this erroneous statement of evidence by the court to the jury, with the inevitable result of great prejudice to the defense, was so grave an error as to require a reversal of the case."

The ruling of the court in sustaining the Government's objection to counsel's argument on this question was followed by an absolute determination that McFadden did not come onto the station until 7:00 p. m. or 7:30 p. m. and thereby precluded the jury from deciding that McFadden came onto the station earlier, at 6:30 p. m. or 6:45 p. m., and that agents Theisen and Costarella mistook McFadden for defendant. It is true the court in its general instructions told the jurors that they were the exclusive judges of the evidence and that the court had not intended in any way to indicate any opinion on the evidence. The special instruction, however, was not the expression of an opinion but was an absolute determination of an important fact, and the general instruction could not have cured the instruction which determined this important fact and removed it from the consideration of the jury, and this specific charge to the jury cannot be cured by a general charge. Neither could the general charge supply the argument which counsel was prevented from making on this testimony, nor could it overcome the inevitable effect of this instruction of the court on counsel's argument and his standing before the jury.

Other contentions urged by the defendant need only be given casual consideration because a new trial must be granted in any event and defendant's other alleged grounds for reversal will unlikely affect the retrial of the case.

On these appeals defendant was not represented by self-appointed counsel who tried the case. These appeals have been prosecuted in forma pauperis and defendant has been represented by counsel appointed by the Court, acting with-

out compensation, and he has ably presented every available defense with commendable earnestness and fidelity.

It follows that the judgment and Order appealed from are reversed, and the causes remanded to the trial court with directions to grant defendant a new trial.